# Pennsylvania Fire Ins. Co. *v.* Draper.

## *Assumpsit.*

(Decided May 21, 1914.   Rehearing denied June 18, 1914.
65 South. 923.)

1. *Appeal and Error; Harmless Error; Evidence.*—Where there was evidence that the agent who issued the policy continued to act as agent up to within three weeks of the loss, and that he notified the company of the loss, and there was no question raised as to the notice of loss, the breach of the iron safe clause being the only defense relied upon, the admission of testimony that when plaintiff told the agent of the loss he did not know that the company had changed agents at that place, was harmless, and could not have prejudiced the defendant.

2. *Same; Assignment; Waiver.*—Assignments of error not insisted upon in oral argument or in brief of appellant, are waived.

3. *Charge of Court; Reference to Pleadings.*—Instructions which refer to pleas and replications by their number are incomplete because requiring the jury to examine such pleas and replications for a full understanding of the charge.

4. *Insurance; Evidence.*—Where, although there was evidence that the adjuster was not employed regularly as such, but only for particular cases, and that there were limitations upon his authority, yet it was shown that plaintiff had no notice of such limitation, the jury were justified in inferring authority on the part of the adjuster to bind the company by a waiver of any breaches of the terms of the policy.

5. *Same; Jury Question.*—The evidence examined and held sufficient to require a submission to the jury of the question whether the adjuster with full knowledge of breaches of the iron safe clause, and after an investigation, promised to pay the policy, and thereby waived such breaches.

6. *Same; Forfeit; Waiver of Right to Avoid.*—A non-waiver agreement signed by an insured after a loss requesting an adjuster to make an examination of the books, papers and other evidence of loss, with the express understanding or agreement that such examination should not be considered an acknowledgment of liability on the company's part, nor a waiver nor impairment of any of its rights or defenses, although it prevented a waiver of a breach of the iron safe clause from the examination alone. did not prevent a waiver by positive declarations or acts evidencing the clear purpose to waive any breach and treat the policy as valid, after learning of such breach; hence, notwithstanding such agreement, evidence as to the subsequent conduct and statements of the adjuster were admissible to prove a waiver.

7. *Same; Construction of Policy.*—An insurance policy will be liberally construed in favor of the insured and strictly against the insurer as to conditions and duties of the insured.

8. *Same; Adjustment of Loss; Examination.*—The adjustment of a loss under a fire insurance policy is the ascertaining and determining of the amount of the indemnity, which insured is entitled to receive after making all proper allowances, or the amount of loss as so determined, the terms, examination and adjustment, not being convertible terms.

9. *Same; Instructions.*—Where the sole defense was plaintiff's failure to observe the iron safe clause and the principle issue was as to whether there had been a waiver of such failure, a charge asserting that if the jury believed the evidence plaintiff breached the covenants and warranties of the policy in that he failed to keep a set of books clearly and plainly presenting a complete report of his business transaction, was not only misleading but gave undue prominence to the facts therein mentioned, and involved no legal question.

10. *Same.*—Where the principle issue was as to a waiver of the iron safe clause by a promise to pay with knowledge of such breach, a charge asserting that if the jury believed the evidence they could not find for plaintiff on account of any settlement of the claim, was misleading and confusing.

11. *Pleading; Rejoinder; Proof.*—The courts of law still recognize the rule that a defendant is entitled to have the verdict directed for it where its rejoinder is proven by uncontroverted testimony, regardless of its merits.

12. *Same.*—Where the rejoinder alleged that the adjuster did not proceed with an examination or adjustment after discovering that the insured had violated the iron safe clause, until the insured consented and agreed that by going on with such examination and adjustment, the insurer should not be held to have waived any defense it might have, proof that the adjuster neither proceeded with the examination nor with the adjustment was necessary to render applicable the rule that a defendant is entitled to a directed verdict where its rejoinder is proved by uncontroverted evidence, regardless of its merits; for, though the averment was in the alternative, it was a negative alternative requiring proof of both.

APPEAL from Jefferson Circuit Court.

Heard before Hon. JOHN C. PUGH.

Action by R. W. Draper against the Pennsylvania Fire Insurance Company on a fire insurance policy. Judgment for plaintiff and defendant appeals. Affirmed.

The facts sufficiently appear. The following charges were refused defendant:

(9) The court charges you that, if you believe from all the evidence in this case that defendant's agent, Reynolds, took a nonwaiver agreement from plaintiff as soon as said Reynolds became aware of the breach of

the conditions and covenants contained in the said policy of insurance by plaintiff, then you must find a verdict for defendant.

(20) If you are reasonably satisfied from all the evidence in the case that as soon as defendant's agent, Reynolds, discovered that there had been a breach of the conditions and warranties contained in the policy by plaintiff, plaintiff then and there consented and agreed that by going on with the adjustment or examination defendant should not be held to have waived any defense it might have to the claim of plaintiff under said policy, then you must find a verdict for defendant.

(21) If you believe all the evidence in this case, plaintiff breached the covenant and warranty contained in his policy of insurance by leaving his inventory book out of the iron safe in his store after the close of business on the night of the fire, and before the opening of business the next day, then you cannot find a verdict for plaintiff, unless you should be reasonably satisfied from all the evidence in this case that defendant's agent, Reynolds, waived said breach of said covenant and warranty by plaintiff with knowledge of said breach before plaintiff signed the nonwaiver agreement.

(37) If you are reasonably satisfied from all the evidence that defendant's agent, Reynolds, did not proceed with his examination or adjustment of plaintiff's loss after discovering that there had been a breach of the conditions and warranty contained in plaintiff's policy by plaintiff, until plaintiff had consented and agreed that by going on with such examination or adjustment defendant should not be held to have waived any defense which it might have to the claim of plantiff under said policy, then you cannot find a verdict for plaintiff.

(41) If you believe all the evidence in this case, plaintiff breached the covenants and warranties contained in

plaintiff's policy, in that he failed to keep a set of books which clearly and plainly presented a complete report of business transactions, including all purchases, sales, and shipments, both for cash and on credit.

(42) If you believe all the evidence in this case, the court charges you that you cannot find a verdict for plaintiff on account of any settlement of plaintiff's claim under his policy by defendant or its agent.

A. G. & E. D. SMITH, for appellant. The defendant was entitled to the general charge because of a violation of the iron safe clause.—19 Cyc. 761; *Day v. Home I. Co.,* 57 South. 444; *Wcs. Co. v. McGlathery,* 115 Ala. 213; 180 U. S. 132; *Dwight v. Ins. Co.,* 103 N. Y. 346. Knowledge of a breach is essential to constitute a waiver, and it required that the company with such knowledge should have entered into negotiations which recognized and treated the policy as still in force, or which induced the insured to incur trouble or expense. —*Queen I. Co. v. Young,* 86 Ala. 425; *Capital C. I. Co. v. Cofield,* 131 Ala. 198. These cases hold also that regardless of whether the rejoinder had merit, if it was proven uncontradictedly the defendant was entitled to judgment thereon.—Authorities supra, and *Stevenson, et al. v. Whalley,* 161 Ala. 250. Under these authorities, the charges requested should have been given. Defects in pleadings cannot be cured by supplying the omission by evidence.—*Capital C. S. Co. v. Holland,* 60 South. 495; *Id. v. Davis,* 60 South. 498.

JOHN H. MILLER and JOHN T. GLOVER, for appellee. The courts do not favor forfeiture and always construe the terms of the policy favorably to the insured, and take hold of any circumstances which indicate an election to waive a forfeiture.—*Queen I. Co. v. Young,* 86

Ala. 424; *Washburn v. U. C. L. I. Co.,* 143 Ala. 485; *Ala. Co. v. Long,* 123 Ala. 667; *Robinson v. Aetna I. Co.,* 128 Ala. 477; *Ins. Co. v. Catchings,* 104 Ala. 188. As to what an investigation and an adjustment, is, and the effects of the same, see *Liverpool, etc., I. Co. v. Tillis,* 110 Ala. 201; *Ga. Home v. Allen,* 119 Ala. 436; 22 Atl. 885; 35 South. 171; 3 Colley's Briefs on Insurance 2742; 4 Id. 3590.

GARDNER, J.—This is a suit by appellee against appellant, substantially in Code form, on a policy of fire insurance issued to appellee on his stock of goods. There were two counts, the second count claiming also the statutory penalty of 25 per cent. of actual damages or loss, for the reason of membership of defendant company in a tariff association wherein certain premium rates were fixed, etc. The sole defense interposed was a breach of the "iron-safe clause," wherein defendant claimed the inventory was not properly kept nor produced, nor were the books kept in compliance with the provisions of the policy, etc. There were pleas, replications, and rejoinders, not necessary for us to set out in this opinion, as no asignment of error presents for review any ruling of the court on the pleadings.

To the said defense of a breach of the "iron-safe clause" plaintiff replied, declaring upon a waiver of the breach or breaches, if any there were, in that the defendant sent one W. L. Reynolds to the scene of the fire with authority to examine, investigate, and adjust the loss and damages, and, in substance, that said adjuster, being informed fully of a violation of said terms of said policy, recognized and treated the policy as binding, and agreed to pay the same.

To such replications the defendant rejoined that after said Reynolds had entered upon an examination and in-

vestigation of said loss with a view to adjustment there-of, said Reynolds then and there for the first time discovered there had been a breach or breaches of terms of said policy, and that he then refused to proceed with such examination or adjustment unless and until plaintiff would consent that by so proceeding with said examination and investigation the said Reynolds and said defendant should not be held to have waived any defense defendant might have to the claim of plaintiff; that plaintiff did then agree that the further investigation and examination or adjustment of said loss by Reynolds should not be taken as a waiver of any defense, etc.

The third rejoinder sets up that the said Reynolds did not proceed with said examination or adjustment after discovering that there had been a breach of the conditions and warranties contained in said policy until the plaintiff had consented and agreed that by going on with such examination or adjustment the defendant should not be held to have waived any defense it might have to the claim of plaintiff under the said policy.

The rejoinder had reference, as appears, to the execution by plaintiff of what is termed a "nonwaiver agreement."

It is shown by testimony of the witness Adams: That his firm was agent for defendant company at the time this policy was issued, and that he issued the same. That he remained such agent until the latter part of March, 1910, but continued to write business for the company during the month of April. The fire occurred May 21st. The plaintiff came to see him after the fire, asking his advice, etc., and that he (witness) notified the company of the losss. That when he notified the company of the loss they replied by writing him a let-

ter that they had turned the matter over to Mr. Reynolds, and that "W. L. Reynolds had been appointed by it to adjust this loss." That he so notified plaintiff. The plaintiff testified that he notified the witness Adams of the loss, and that Adams told him W. L. Reynolds had been appointed to adjust the loss, and that he would find him at the Morris Hotel. The witness was asked whether or not, at the time he so notified Adams of the loss, he knew the company had changed its local agent at Birmingham. Defendant objected to question upon ground that it called for immaterial and irrelevant testimony, which objection was overruled, and this constitutes one of the assignments of error on this appeal. The witness answered he did not know it. As stated, the witness Adams had continued to act as agent up to within three weeks of this loss. He, as agent, had issued this policy. He notified the company of the loss, and the company appointed W. L. Reynolds "to adjust the loss," as the witness stated it. There is no question raised as to the notice of the loss. The only defense was the breach as to the "iron-safe clause" of the policy. The testimony was merely by way of explanation of why the plaintiff notified Adams. We do not hold the question called for testimony "immaterial and irrelevant," under the circumstances and at that stage of the trial, for this need not be decided, but we do hold that in any event it was entirely harmless, and we are unable to see that any possible prejudice could result therefrom. In this there was no reversible error.

While the defendant company, in answering interrogatories filed under the statue, stated that W. L. Reynolds was not regularly employed as its adjuster, but was employed for this particular case, and that there were limitations upon his authority, yet it is further shown that plaintiff had no notice of any limitations.

The following quotation found in case of *Georgia Home Insurance Co. v. Allen,* 128 Ala. 451, 30 South. 537, is in point:

"The question is not so much," observes Mr. Joyce, "what powers did the agent actually possess? It is the agent's ostensible or apparent authority, that which he is held out to the world to possess, which is the test of his actual power, in the absence of knowledge of limitations thereon, on the part of persons dealing with such agent. And the tendency of courts of the present day is toward a liberal, rather than a strict, construction of an agent's power. * * * An insurance company is bound by the acts of its agents within the real or apparent scope of his authority, and to this extent the act of the agent is the act of his principal."

The opinion proceeds:

"The same author lays it down, supported by a greater array of authorities, that such an agent may waive conditions, notwithstanding inhibitions in the policy; and that where the agent, who has knowledge that a ground of forfeiture exists, and thereafter by some act recognizes the contract as valid, there is a waiver. * * * Where, after a fire, an insurance company sends a person to the scene of the fire and authorizes him to act as an adjuster in the particular case, with all the authority in reference thereto that is given to general adjusters, the insured, in dealing with such persons, in the absence of notice to the contrary, has the right to presume he has authority to act for and bind the company as to all matters within the scope of his duties as the adjuster in the particular case, and such special adjuster, by denying all liability under the policy, may waive the provisions of the policy, requiring the assured to produce formal proofs of loss as effectually as could the general adjuster of the company."

In the case of *G. C. Ray v. Fidelity-Phenix Fire Ins. Co., infra,* 65 South. 536, speaking to the same question, it is said:

"His acts, within the usual scope of the business intrusted to such agents, provided plaintiff acted in good faith and was not guilty of negligence, bound his principal despite his private instructions, for the authority of an agent, as to those with whom he deals, is what it reasonably appears to be.—*Syndicate Ins. Co. v. Catchings,* 104 Ala. 176 [16 South. 46.]"

We therefore think it quite clear that the evidence in this case was entirely sufficient for the jury to infer authority of W. L. Reynolds, the adjuster, to bind defendant company by waiver of any breaches of the terms of the policy.—*Liverpool & London & Globe Co. v. Tillis,* 110 Ala. 201, 17 South. 672; *Robinson v. Aetna Ins Co.,* 128 Ala. 477, 30 South. 665.

The plaintiff testified that in his first interview with the adjuster Reynolds he informed him of what books he had saved and of the loss of the inventory book, and that said Reynolds stated that would be all right; "that we could get along without that inventory book all right." It was at this time that the adjuster stated to plaintiff there seemed to be some irregularity in the "iron-safe clause," and had plaintiff to sign the "non-waiver agreement" heretofore referred to.

After the execution of said agreement, plaintiff went with Reynolds to the scene of the fire, gave him what books he had, and explained same to him. He had previously answered question of Reynolds as to what stock he carried, etc., and to which Reynolds replied that he was not sufficiently covered by insurance. The books delivered to the adjuster were kept by him about 60 days, and then returned to plaintiff. The proof shows the value of the stock destroyed to be between $5,000

and $8,000. Plaintiff also had insurance in same company on his store house which was paid by defendant. Reynolds was the adjuster as to the entire loss, store and merchandise.

Testimony was elicited from plaintiff, against objection of defendant, to the effect that at that time when he and the said Reynolds were at the scene of the fire and said books were delivered and explained that the latter told him to "meet him uptown in two or three days and we will fix the matter up"; that in two or three days, he (plaintiff) went "uptown" and saw Reynolds; that Reynolds asked him if he was in a hurry for his money, to which he replied in the negative, but asked Reynolds what disposition to make of the "old burned stuff that is all moulding and ruining down there," to which Reynolds replied, "That is all right; throw it away, or give it away; that don't amount to a row of pins;" that Reynolds then stated that he had a telegram to go to Georgia to adjust a loss, saying, "I will appreciate it if you will give me time to go over there and adjust that, and as soon as I come back I will fix you up all right." Witness Kay, who was with plaintiff at that time, testified to substantially the same thing, except that he stated Reynolds said: "If it does not interfere with you, I will run over and adjust that matter, and will fix you up and pay your claim when I return."

The objection to the above testimony by defendant seems to rest principally upon the fact that this took place subsequent to the execution by plaintiff of the nonwaiver agreement." Counsel for appellant seems to make the insistence that execution of this agreement precluded plaintiff from offering any proof as to what occurred subsequent thereto. It is necessary therefore to refer to this agreement and ascertain its meaning and effect. It reads as follows:

"Q551—12—18—07—1000. Nonwaiver Agreement. R. W. Draper, assured under Policy $\frac{5656}{5657}$ of the Penn Insurance Company of Pa., issued at Birmingham, Ala., agency hereby requests W. L. Reynolds, adj., to make examination of books, papers, and other evidence of loss (including assured's sworn statement if deemed necessary), which I submit to him for the purpose of ascertaining amount of loss, sustained by me by fire of May 1st, 3:30 a. m., 1910, with the express understanding and agreement that such examination shall not be considered an acknowledgment of any liability of the said Pennsylvania Insurance Company of Pa. under said policy, nor a waiver or impairment of any of the rights or defenses of that company under said policy, nor a waiver or impairment of assured's obligations thereunder. It is further understood and agreed that the existing legal rights, if any, the said R. W. Draper may have under said policy are not impaired by his act in signing this request. Witness our hand and seal this 25th day of May, 1910. R. W. Draper."

It thus appears that the agreement merely requests an examination of books, papers, and other evidence of loss, submitted for purpose of ascertaining amount of loss, with understanding that such examination shall not be considered as fixing liability, etc. It says nothing as to an *adjustment* of the loss, but only that such *examination* shall not fix liability.

Giving to it a natural and reasonable construction, we think its purpose was merely to prevent a liability being fastened upon defendant by virtue of the fact that the *investigation* would be continued *after* a knowledge by the adjuster of the breach, recognizing that by so continuing *after* such knowledge it may be considered as treating the policy as valid and binding, and there-

fore that the mere *continued examination* might be held a waiver.—*Georgia Home Ins Co. v. Allen,* 119 Ala. 436, 24 South. 399.

There is nothing in the language of the agreement to indicate that the company could not be bound by positive declarations or acts evincing a clear purpose to waive any breach and treat the policy as valid. To so hold would require the greatest liberality of construction, and one not justified by the language used. Indeed the current of our decisions requires, as to conditions and duties of assured prescribed in a policy, that they should be liberally construed in favor of the assured, but strictly against the insurer.—*Georgia Home Ins. Co. v. Allen, supra; Tubb v. L. & L. & G. Ins. Co.,* 106 Ala. 651, 17 South. 615.

We conclude, therefore, that the said "non-waiver agreement" furnishes no ground of objection to the admissibility of said testimony. We are of the opinion that there is nothing in the opinion of *Day v. Home Ins. Co.,* 177 Ala. 600, 58 South. 549, 40 L. R. A. (N. S.) 652, which in any manner militates against this conclusion. We are also of the opinion that this evidence was sufficient to go to the jury on the question as to whether or not the adjuster with full knowledge of the breach or breaches, and after the investigation, promised to pay the policy, and thereby waived the breach.

"A completed adjustment of the loss, with an agreement of the company to pay the amount so determined, effects a waiver of the forfeiture."—Cooley's Briefs on Insurance, vol. 3, p. 2742.

The following from the case of *Tillis v. Liverpool & London & Globe Ins. Co.,* 46 Fla. 268, 35 South. 171, 110 Am. St. Rep. 89, is also to same effect:

"It cannot be assumed that the agent could have adjusted the loss without causing the plaintiff some

trouble or inconvenience; but, whether so or not, we think the conduct of the agent in adjusting and agreeing to pay the loss after knowledge of the facts which would have caused a forfeiture of the policy operates as a waiver of the forfeiture, and that the replications are good as against the demurrer."

The proof shows the amount of the loss to have been far in excess of the recoverable amount of the policy, and tends to show a knowledge thereof by the adjuster. There does not appear to have been controversy except as to this policy, and what was said between plaintiff and Reynolds as to the merchandise that was left "moulding" etc., may be said to be some indication as to what policy reference was made. The language used by the adjuster was, in our opinion, clearly sufficient to go to the jury, from which they had a right to infer a reference to the policy and an agreement to pay the amount thereof upon his return. If so, then the evidence was clearly admissible.

It is further insisted by counsel for appellant that defendant was entitled to the affirmative charge, for that issue was taken upon the defendant's rejoinder No. 3, and the same was proved by uncontroverted testimony, and this results without regard to whether the rejoinder had merit.

This rule is still recognized in courts of law.—*Capital City Ins. Co. v. Cofield,* 131 Ala. 198, 31 South. 37.

We are of the opinion, however, that defendant did not bring itself within the rule. The third rejoinder, as heretofore pointed out in this opinion, sets up that the plaintiff consented and agreed that by going on with such examination or adjustment the defendant should not be held to have waived any defense, etc.

The "nonwaiver agreement" does not use the word "adjustment" at all. Examination" and "adjustment" are not convertible terms.

"The adujstment of a loss  *  *  *  'is the settling and ascertaining the amount of the indemnity which the insured, after making all proper allowances, is entitled to receive;  *  *  *  or it is the amount of the loss as settled between the parties to a policy of insurance.' "— *Liverpool & London & Globe Ins. Co. v. Tillis,* 110 Ala. 212, 17 South. 672.

The third rejoinder, therefore, was not proved by uncontroverted evidence, as insisted, and defendant was not entitled to the affirmative charge.

The first eight assignments of error relate to the admission of evidence which we have in a general way discussed, and from what has heretofore been said it is seen we are of the opinion that this evidence was admissible to go to the jury on the question of waiver, and plaintiff was not precluded therefrom by said "non-waiver" agreement.

Assignments numbered 12, 13, 15, 22 23, and 28, which relate to refusal of certain charges, seem not to be argued in brief by counsel for appellant, and are therefore waived.

Assignments numbered 18, 19, 20, 21 and 25 relate to refusal of charges 31, 32, 33, 34, and 38. Each of these charges makes reference to certain pleas or replications by number requiring of the jury an examination of such pleas, replications, etc., for a full understanding of the charges, and charges in this form have been condemned by this court and their refusal held no error.—*Ala. Great So. R. R. Co. v. McWhorter,* 156 Ala. 269, 47 South. 84, fourteenth headnote; *Birmingham Ry. Light & Power Co. v. Fox,* 174 Ala. 657, 56 South. 1013, twenty-first headnote.

Assignments of error numbered 9, 10, and 11 refer to refusal of affirmative charge on the whole case and as to each count, and need no further discussion. The

cause was properly submitted to the determination of the jury.

Charge 9 is the basis of the fourteenth assignment of error. This charge predicates a verdict for defendant solely upon execution of the "nonwaiver agreement."

Charges 20 and 37 (assignments of error 16 and 24) seem to proceed upon the theory of proof of rejoinder No. 3, and they also ignore the evidence as to anything occurring subsequent to said "nonwaiver agreement," and this latter criticism is also applicable to charge 21 (assignment No. 17).

Charge 41 is basis of assignment No. 26. In view of the fact that the issue in the case was principally that of a waiver of the breach, this charge has a misleading tendency, and also gives undue prominence to the facts therein referred to. It involved no question of law. Charges of a similar character were condemned in *Decatur Light & Power Co. v. Newsome,* 179 Ala. 127, 59 South. 615.

Charge 42 (assignment of error No. 27) has also a misleading tendency, and is subject also doubtless to further criticism as somewhat confusing in use of the word "settlement." The only argument in brief of counsel as to this charge is merely by reference to what is said in brief under "proposition 1," which is argument as to affirmative charge.

We have carefully considered each assignment of error insisted upon by counsel for appellant in brief, and we conclude there was no reversible error committed by the court below and that therefore its judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

ON REHEARING.

GARDNER, J.—It is earnestly insisted on this application that appellant was entitled to the affirmative charge, for that rejoinder No. 3 was proven by uncontroverted evidence, and this results, whether material or not, under the authority of *Capital, etc., Co. v. Cofield,* cited in original opinion, as well as many others. The rule found in the above authority was recognized in the opinion, but it was held that appellant did not bring itself within the rule. It is urged, however, that the said third rejoinder used the disjunctive *or* as "examination or adjustment" and that, if appellant proved *either* alternative the affirmative charge should have been given. Rejoinder numbered 3 begins, "That the said Reynolds did not proceed with said examination or adjustment after discovering," and concludes, "until the plaintiff had consented and agreed that by going on with such examination or adjustment the defendant should not be held to have waived any defense it might have," etc. It is therefore alleged in said rejoinder that said Reynolds did not proceed with the *examination or adjustment,* etc.—that is, that he proceeded with the examination, but there is also proof with strong tendency to show that he likewise proceeded with an *adjustment* of the loss. The averment of the rejoinder is, in effect, that he proceeded with *neither,* while the proof tends to show that he proceeded with *both.* Although the language is in the *alternative,* it is nevertheless a *negative* alternative, requiring proof of both. All of this is admittedly very technical, and has the appearance of being a mere play upon words, but it is necessitated by the somewhat technical rule referred to in the above authority, among others. While it may be conceded that some of the expressions in the opinion on

[Nelson v. Holcomb, et al.]

this particular matter may be considered as possibly incomplete, yet the conclusion and result are the same, and the affirmative charge was properly refused.

The application for a rehearing is overruled.