120 So.2d 390

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

v.

Ralph J. NEWELL et al.

8 Div. 796.

Supreme Court of Alabama.

March 10, 1960.

Rehearing Denied May 19, 1960.

Mitchell & Poellnitz, Florence, for appellant.

Guin & Guin, Russellville, for appellees.

GOODWYN, Justice.

This is an appeal by the defendant below from a judgment of the circuit court of Franklin County rendered on a jury verdict in favor of appellees, plaintiffs below, and also from an adverse ruling on appellant's motion for a new trial.

The suit was originally brought by Ralph J. Newell. By amendment prior to trial, appellee Associates Discount Corporation (referred to hereinafter as "Associates") joined in the suit as a co-plaintiff.

As last amended, the complaint consisted of counts B and C. Both counts seek recovery under an alleged oral contract of collision insurance covering Newell's automobile, on which Associates holds a mortgage.

The gravamen of count B is that defendant State Farm Mutual Automobile Insurance Company, "acting through or by its duly authorized agent, H. O. Kelly, while acting within the line and scope of his employment as such," made an oral contract of insurance with Newell on June 10, 1953, insuring his automobile against loss by collision, with a $50 deductible clause, for a period of 18 months; that such insurance "was to be subject to all the terms and conditions of the automobile policy issued by the defendant insurance company"; that the consideration for the alleged contract was the payment by Newell to the agent of $7 in cash and the execution and delivery by Newell to defendant of his written evidence of debt [a promissory note] in the amount of $91.50, payable to defendant on demand but not before August 10, 1953; that the said automobile was destroyed in a collision on July 13, 1953.

In count C it is alleged that the oral contract of insurance was made "by the defendant's agent, H. O. Kelly, acting on defendant's behalf" and that, "with full notice or knowledge of the said contract and of the terms and provisions thereof, the defendant ratified and confirmed the same, in the manner following:

"The said defendant had, held and retained in its possession the said cash premium of $7.00 and the said premium evidence of debt in the sum of $91.50 for a long time before the plaintiffs' said loss, and for a long time after the plaintiffs' said loss, and the defendant did not assert non-liability on its said contract, so made for it by its said agent, until, to-wit, the 30th day of September, 1953, at which time in a letter a copy of which is attached hereto and incorporated herein by reference written to the plaintiff Ralph J. Newell from defendant's home office at Bloomington, Illinois, by its duly authorized assistant underwriting superintendent, B. D. Ferguson, the defendant undertook to disaffirm

**554**

and cancel the insurance contract from its inception, on the ground, as asserted by it, that plaintiff Ralph J. Newell had made misrepresentations in his application for insurance. The plaintiffs allege that they were not guilty of any material misrepresentations contained in their application to defendant for insurance." (Count C originally contained other allegations which, on defendant's motion, were struck out by the trial court.)

The receipt given by Kelly to Newell for the $7 cash payment, the note for $91.50, and defendant's letter to Newell of September 30, 1953, will be set out in the report of the case.

 Further pleading was at length, consisting of a number of pleas and replications and demurrers thereto. To set out all of such pleadings and the rulings thereon would tend unduly to complicate what seems to us to be a case involving, in the main, an issue of fact, viz: whether Kelly had authority to bind the defendant by the alleged oral contract of insurance.

Our cases follow the general rule that, unless prohibited by statute, an oral contract of insurance is valid if made by an agent acting within the actual or apparent scope of his authority. Globe & Rutgers Fire Ins. Co. v. Eureka Sawmill Co., 227 Ala. 667, 670, 151 So. 827; Commercial Fire Insurance Co. v. Morris & Co., 105 Ala. 498, 506, 18 So. 34; Queen Ins. Co. of America v. Bethel Chapel, 27 Ala.App. 443, 445, 174 So. 638. For other cases, see 12 Ala.Dig., Insurance, ☞131(1). Further, that "it is the agent's ostensible or apparent authority—that which he is held out to the world to possess—which is the test of his actual power in the absence of knowledge of limitations thereon on the part of persons dealing with such agent." Fidelity-Phoenix Fire Insurance Co. v. Ray, 196 Ala. 425, 427, 72 So. 98, 99; Pennsylvania Fire Ins. Co. v. Draper, 187 Ala. 103, 110, 65 So. 923. In speaking to

the same effect in Ray v. Fidelity-Phoenix Fire Ins. Co., 187 Ala. 91, 95, 65 So. 536, 538, it was said:

"* * * And it may be assumed that this agent's express authority was limited to the mere making of an investigation and a report of the result. But plaintiff had no notice of that limitation, and this agent's authority as to third persons was governed by the nature of the business intrusted to him. His acts, within the usual scope of the business intrusted in such agents, provided plaintiff acted in good faith and was not guilty of negligence, bound his principal despite his private instructions, for the authority of an agent, as to those with whom he deals, is what it reasonably appears to be. * * *"

In the light of the foregoing principles, it is our view that the evidence, and the reasonable inferences therefrom, presented, with respect to Kelly's apparent authority, a typical case for the jury's determination.

Facts supportive of the jury's finding may be summarized as follows: Newell owned a 1952 Pontiac automobile purchased by him in September, 1952, for $2,556.06 from a firm in Chicago. In financing the purchase he mortgaged the car to Associates. In connection therewith he obtained a collision insurance policy from Associates' subsidiary, Emmco. Also in 1952, Newell applied for and received liability coverage on the car from defendant, dealing with H. O. Kelly, defendant's agent in Haleyville, Alabama, near Newell's family home, who was the same agent in the case now before us. The liability policy, of course, is not involved in this suit but bears on Newell's former dealings with Kelly, and also on Newell's insistence that he acquired "membership" with defendant, a mutual company, at that time. Kelly testified that he countersigned

the liability policy as defendant's "authorized agent" before delivering it to Newell, as was the usual practice with respect to policies issued through his office.

Prior to June 10, 1953, Newell's automobile was involved in three collisions, all of which, according to Newell, were brought about without fault on his part. Following the last of these accidents, Emmco wrote Newell a letter cancelling its collision insurance. This was followed by a letter from Associates to the effect that it would have to foreclose its mortgage if new collision insurance was not taken out. At this time Newell was at his father's home. He went to Kelly's office on June 10, 1953, and there talked with Mrs. Grace Ware, Kelly's secretary, prior to talking with Kelly. He testified that he told both Mrs. Ware and Kelly about the prior accidents and the fact that his insurance had been cancelled by Emmco. At this time Newell found Kelly, as before, in possession of forms, including applications, binders, receipts, premium notes and letter heads showing Kelly as defendant's agent. These were either furnished by defendant or being used with its knowledge. Also, there was a sign at the entrance to Kelly's office showing him to be defendant's agent. Kelly also was in possession of rubber stamps showing him to be the defendant's agent.

Kelly had in his possession the defendant's rate schedule and from it figured the premium due for 18 months. On the basis of such calculations, Newell paid Kelly $7 in cash, for which Kelly gave the receipt set out in the report. It is to be noted that the receipt is dated June 10, 1953, and acknowledges receipt of the $7 by Kelly as defendant's agent "in payment of New Big Pontiac." Kelly also took Newell's note payable to defendant for $91.50, due "on demand but not before August 10, 1953." This note was on a form furnished by defendant. There was a dispute as to whether the $7 cash payment was for a member-

ship fee or part payment on the premium. Defendant takes the position that it was a membership fee while Newell insists it was payment on the premium; that he had already paid a membership fee in connection with the liability insurance issued him by defendant.

Newell testified that Kelly told him he was insured until he (Kelly) could collect the return premium from Emmco, which would pay for the note, and that Kelly agreed to send a binder to Associates. It appears that a binder was actually sent to Associates, but it was only for 30 days, which, according to Newell, was contrary to the oral agreement. Newell did not learn of this until sometime after the damage to his car on July 13, 1953.

The position taken by defendant is that Kelly gave to Newell, and was authorized to give, only a 30 day binder; that since the collision occurred after expiration of the 30 day binder, Newell did not have coverage at time of the collision. On the other hand, Newell testified that Kelly told him the $7 cash payment was for a "binder"; that no written binder was given to him; that, instead of being limited to 30 days, the oral binder was for 60 days or until the premium refund was paid by Emmco. Newell further testified that sometime between June 10 and June 22, 1953, he was called to Kelly's office; that Kelly had written to Emmco for the premium refund; that Emmco had sent a form to Kelly to be signed by Newell; that Newell signed the form releasing the refund to Kelly; that Kelly told him that upon receipt of the money he would mail out the policy; that Newell never did get the policy nor a written binder; and that notice of cancellation of the insurance coverage by defendant was not received until receipt of defendant's letter of September 30, 1953.

Newell introduced in evidence a photostatic copy of the application which he signed on June 10, 1953. Attached to it is

a binder form showing issuance to Newell of a binder for 30 days from date. Although the binder form calls for data showing the kind and extent of coverage, such data is not filled out. The defendant introduced in evidence the original application without the attached binder form. The photostatic copy of the application was produced by defendant pursuant to a court order issued at the instance of Newell, who introduced it in evidence. The position taken by Newell is that the attachment of the binder to the photostatic copy supports his position that a written binder, limited to 30 days, was not issued to him.

An examination of the application signed by Newell discloses nothing indicating any restriction or limitation as to Kelly's authority. At the top of the application is defendant's name with the "effective date" being shown as "6–10–53," from which the jury could infer that coverage commenced at that time. The "date of application" is shown separately at the bottom as "6–10–53."

On the face of the application there appears a premium calculation for "18 months" at "3 x 30.50 = $91.50" plus "$7.00". The original application has stamped on it at the bottom, apparently by rubber stamp with black ink, between "Local Agent" and "Code No.", the following: "H. O. Kelly 545." On the next line, between "District Agent" and "Code No." there is stamped in red ink the following: "H. O. Kelly 47."

Kelly's agency contract with defendant makes no mention of his authority to issue or not to issue binders, although he testified that he had been making binders on behalf of defendant.

In short, the position taken by Newell is that he had at least a 60-day binder and that, since the car was damaged well within that period, he is entitled to recover. (There is no dispute as to the amount of damages to the car.) The defendant's position is that Kelly had no authority under his contract to bind it more than 30 days and that the evidence was not sufficient to support a finding of his ostensible or apparent authority to do otherwise.

In defendant's brief it is stated: "We would be lacking in candor not to say to the court that the evidence shows that Kelly had more authority than is included in the definition of a local agent as adopted by our courts. By the same token, the evidence falls short of showing that Kelly had the type authority described by our courts in defining the authority of a general agent." While there is evidence from which the jury could have found that Kelly's ostensible or apparent authority was limited to that ordinarily given to a "local" agent, there is, we think, ample evidence supportive of a finding that Kelly, under the particular circumstances, had ostensible or apparent authority to bind the defendant in a manner usually accorded a "general" agent. In none of the instruments coming to Newell's attention was there anything indicating that Kelly was limited in his authority as agent for defendant. It is our view that the jury was clearly warranted, under all the facts and circumstances, to find that Kelly had ostensible or apparent authority to bind the defendant. It seems patently clear that Kelly was considerably more than just a "soliciting" agent.

As already indicated, Newell, at the time of the alleged oral contract, signed an application for the insurance on a form furnished Kelly by defendant. This application contained answers to questions to the effect that Newell had had no accidents and that prior insurance had not been cancelled by any other insurance company. Newell testified that he signed the application without reading it; that he had informed Kelly and Kelly's secretary of the accidents and the cancellation by Emmco; and that the false answers to the questions were placed there by defendant's agent. As to this, a jury question was presented.

See: Life & Casualty Ins. Co. of Tennessee v. Crow, 231 Ala. 144, 147, 164 So. 83; Inter-Ocean Casualty Co. v. Ervin, 229 Ala. 312, 313, 156 So. 844.

■ We see no need to enter into an extended discussion of any question as to ratification by defendant of the oral contract, in view of our conclusion that the evidence supports a finding of Kelly's apparent authority. However, we observe that this issue, under the evidence, presented a question for the jury. In this connection, it is significant, we think, that defendant's letter of September 30, 1953, to Newell, written almost four months after inception of the transaction, contained the following:

"The facts misrepresented are material to the risk and if we had known the truth of the matter at the time, this would have caused us to reject your application and refuse to issue a binder. You are, therefore, notified that because of such misrepresentation we are hereby rescinding the binding receipt as of the date of issuance and we shall treat as void from inception any and all insurance contracted for under said application, either by virtue of the binding receipt or otherwise."

From this and the other facts and circumstances the jury could find that defendant had knowledge of and recognized the oral contract of insurance as claimed by Newell. For instance, it is to be noted that the car was damaged on July 13, about two and a half months before the letter was written; that Newell notified Kelly of the collision the day after it happened and in about a week an adjuster for defendant talked with Newell about it.

■ Another question raised concerns the overruling of defendant's demurrer to count B. The insistence is that this count is "defective in not alleging the essentials of a contract."

In Globe & Rutgers Fire Ins. Co. v. Eureka Sawmill Co., 227 Ala. 667, 670, 151 So. 827, 829, supra, this court, in discussing the essentials of an oral contract of insurance, had this to say: "The rate of premium, * * * property, and location of the same, as well as the amount of insurance must be agreed upon. When the minds of the contracting parties reach such an agreement, a valid contract of insurance has been made and may be enforced." We think the allegations of count B meet these requirements. See Queen Ins. Co. of America v. Bethel Chapel, 27 Ala.App. 443, 174 So. 638, certiorari denied 234 Ala. 187, 174 So. 640.

■ On cross-examination of Kelly, he was asked about a telephone call from Newell the day after the collision and whether he told Newell that one or the other of the companies had him covered and would have to pay the loss. Defendant interposed no objection. Kelly answered that he did not remember telling him that. On subsequent direct examination of Newell he was permitted, over defendant's objection, to testify that Kelly told him in the telephone conversation that he was covered. There is no necessity of discussing the admissibility of Newell's testimony for the reason that, if not otherwise admissible, it was admissible for the purpose of impeachment.

Finding no error to reverse, the judgment appealed from is due to be affirmed.

On original submission the appeal was dismissed because the record failed to show the organization of the court as required by Supreme Court Rule 24, 261 Ala. XIX, Code 1940, Tit. 7 Appendix, formerly Rule 26. Appellant's petition to set aside the submission and issue a writ of certiorari to have the record completed was

**558**

granted. Thereafter, the case was resubmitted. The opinion dismissing the appeal on original submission is withdrawn.

Opinion on original submission withdrawn.

Affirmed.

LAWSON, SIMPSON, MERRILL and COLEMAN, JJ., concur.