This uninsured motorist case arises from a motor vehicle accident that occurred on February 8, 1985, in Leeds, Alabama. Donna Powell sued State Farm Mutual Automobile Insurance Company ("State Farm") to recover uninsured motorist benefits, alleging that an unknown driver had negligently forced her off the highway and caused her automobile to collide with a telephone pole. The jury found that State Farm had orally agreed to insure the vehicle Powell was driving and assessed damages at $100,000. The trial court entered a JNOV for State Farm, but awarded $25,000 based on coverage under a different uninsured motorist policy.
At the time of the accident, Powell was driving a 1984 Ford Escort automobile that she had purchased from her brother on February 6, 1985. The Ford Escort was insured by Powell's brother through Auto Owners Insurance Company. The uninsured motorist coverage was $20,000. Powell received payment of a claim filed with Auto Owners Insurance Company in the amount of $20,000.
At trial, Powell claimed State Farm owed her additional coverage, under two theories: (1) that State Farm had orally agreed to insure the Ford Escort and (2) that for the Ford Escort she had uninsured motorist coverage under the newly-acquired-motor-vehicle provision in Powell's old and undisputed policy on an Oldsmobile automobile by the fact that she informed State Farm within 30 days of its purchase that she wanted to insure the Ford Escort. *Page 61 
The parties stipulated that State Farm had issued a policy to Powell insuring a 1980 Oldsmobile and that that policy had uninsured motorist coverage of $25,000. However, State Farm denied the existence of an oral insurance agreement on the 1984 Ford Escort involved in the accident. State Farm did not issue a written insurance policy on the Ford Escort.
Powell testified that on or before February 6, 1985, she went to the State Farm office and discussed obtaining coverage on the 1984 Ford Escort with her agent. Powell testified that her agent agreed to insure the Ford Escort and to increase her coverage, and that the agent gave her a "piece of paper," which she said she took to America's First Credit Union. Powell testified that the credit union required proof of insurance before it would agree to finance the Ford Escort. Powell stated that the "piece of paper" provided by State Farm contained the terms of the insurance policy.
After the jury determined that Powell's damages were $100,000, the court submitted the following special interrogatory: "Did State Farm agree to insure the vehicle (Ford Escort) the plaintiff was driving at the time of the accident?" The foreperson checked "yes."
The trial court entered the following order:
 "As a matter of law, after discharging the jury, this Court heard arguments of counsel and determined State Farm's coverage under the stipulated policy coverage to be $25,000.00, and the coverage (uninsured motorist) under the disputed policy to be the statutory minimum (as of accident date) or $20,000.00. Medical payments benefits were never claimed by [the plaintiff]. Hence, Judgment is hereby entered on the verdict in the amount of Forty-Five Thousand Dollars ($45,000.00). Costs taxed to defendant."
State Farm filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, and Powell filed a motion to alter or amend the judgment and requested that she be allowed an additional $25,000 based on the newly-acquired-automobile provision in her Oldsmobile insurance policy. The trial court granted State Farm's motion and remitted the judgment to $25,000. The trial court entered the following order.
 "Defendant's Motion for JNOV Or, In The Alternative, New Trial, came on to be considered by this Court, together with plaintiff's Motion For Reconsideration Or Motion To Amend.
 After reviewing the Court's notes, together with the respective motions of the parties, this Court finds that defendant's Motion For JNOV is well taken. Hence, the verdict of March 7, 1991, is partially remitted on motion of defendant in that the Court finds less than substantial evidence of the existence of an additional policy of uninsured motorist insurance. Hence, Judgment [is] entered in favor of plaintiff, Donna J. Powell, and against defendant, State Farm Mutual Insurance Company, in the amount of Twenty-Five Thousand Dollars ($25,000.00). Costs taxed to defendant. Plaintiff's Motion is Denied.
Powell appealed.
 Issues
This case presents two issues: (1) whether the trial court erred when it granted State Farm's JNOV on the ground that Powell had failed to present substantial evidence of a valid oral contract of insurance between State Farm and Powell on the Ford Escort, and (2) whether the trial court erred in holding that Powell was not entitled to additional uninsured motorist coverage on the Ford Escort based on the newly-acquired-automobile provision in her Oldsmobile insurance policy.
 I. The Propriety of the JNOV
" 'The standard for testing a motion for directed verdict is identical to that for testing a motion for JNOV. Casey v.Jones, 410 So.2d 5 (Ala. 1981). Both motions test the sufficiency of the evidence. Wright v. Fountain, 454 So.2d 520
(Ala. 1984).' Black Belt Wood Co. v. Sessions, 514 So.2d 1249,1251 (Ala. 1986)." John R. Cowley Bros., Inc. v. Brown,569 So.2d 375, 376 (Ala. 1990). By granting the defendant's motion for a JNOV, the trial court held that the plaintiff had not met the required *Page 62 
standard of proof. Ogle v. Long, 551 So.2d 914 (Ala. 1989). InOgle, 551 So.2d at 915 (Ala. 1989), this Court held:
 "The standard of appellate review applicable to a motion for directed verdict is identical to the standard used by the trial court in granting or denying the motion initially. Thus, when reviewing the trial court's ruling on the motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the nonmovant. Bussey v. John Deere Co., 531 So.2d 860 (Ala. 1988)."
Ogle v. Long, 551 So.2d 914, 915 (Ala. 1989).
A valid contract of insurance may be made by oral contract, provided the essential terms are agreed upon. Hartford Accident Indemnity Co. v. Oglesby, 293 Ala. 620, 308 So.2d 695 (1975);United States Fire Ins. Co. v. Hodges, 275 Ala. 243,154 So.2d 3 (1963); Globe Rutgers Fire Ins. Co. v. Eureka Sawmill Co.,227 Ala. 667, 151 So. 827 (1933). In Globe Rutgers Fire Ins.Co., this Court said:
 "In this state it has long been recognized that a verbal [i.e., oral] contract of insurance, as well as a verbal contract to insure, can be made, and will be enforced, when and if all the terms of the contract are agreed upon. This right [to make an oral contract of insurance] existed at common law and has not been changed by statute. The rate of premium, duration of the policy, nature of the risk, the property, and location of the same, as well as the amount of insurance must be agreed upon. When the minds of the contracting parties reach such an agreement, a valid contract of insurance has been made and may be enforced."
227 Ala. at 670, 151 So. at 829 (citations omitted); seeState Farm Mutual Automobile Ins. Co. v. Newell, 270 Ala. 550,120 So.2d 390 (1960).
Powell testified to the following concerning the existence of an oral contract of insurance:
 "Q. Did y'all pay any insurance coverage on this Escort to where you could have it financed?
"A. Yes, we did.
"Q. And who was that with, please, ma'am?
"A. State Farm.
 "Q. And were your other automobiles with State Farm?
"A. Yes, it was.
 "Q. And on any occasion prior to this accident, — what's the fellow's name from Tuscaloosa that came up here and visited you?
"A. Dan Cook.
"Q. Did Mr. Cook ever go with you down there?
"A. Yes, he did.
 "Q. And was there — what was the purpose of you going down to the insurance agency when Mr. Cook was with you?
"A. To get some insurance.
 "Q. And let me ask you this. After the accident, did you go back down to Mr. Dean's office?
"A. Yes, I did.
"Q. Did you report the accident?
"A. Yes, sir.
". . . .
 "Q. And on that occasion, did you have any — they ask you to fill out any papers?
 "A. They took my insurance papers — Mr. Dean himself took my paper that she had for me, and he took it to the back room and he was gone for a couple of minutes, about two minutes, and he come back without it. And I never seen the coverage on the Escort again.
"Q. What was on this paper, please, ma'am?
"A. It was the coverage of the Escort.
 "Q. Was this a policy or an application or what, please, ma'am?
 "A. It was — I'm not quite sure. It had all of the information there. It had my insurance rates from, you know, what my Oldsmobile was, because that was a much older car, and it was raised and everything. It was — to my best knowledge, it was a policy.
 "Q. And you say Mr. Dean took that and came back — and came back out without the copy? *Page 63 
"A. Yes, sir.
 "Q. Did you question him about it, please, ma'am, at that time?
 "A. I asked the girl where was he taking that, and she said we no longer needed it."
Although Powell testified that she obtained insurance on the Ford Escort on or about February 6, 1985, she failed to prove the essential elements of an oral contract. There was no offer of proof by Powell as to the amount of the premium, the duration of the policy, the nature of the risk, or the amount of the coverage. The trial court correctly held that Powell had failed to prove by substantial evidence that State Farm had agreed to insure the Ford Escort.
 II. The Denial of Stacking
Where an insured loss exceeds the limits of one uninsured motorist policy, the insured may stack other uninsured motorist policies to cover up to the actual damages sustained.General Mutual Insurance Co. v. Gilmore, 294 Ala. 546,319 So.2d 675 (1975); Great Central Insurance Co. v. Edge, 292 Ala. 613, 298 So.2d 607 (1974); and State Farm Mutual AutomobileInsurance Co. v. Cahoon, 287 Ala. 462, 252 So.2d 619 (1971); Ala. Code 1975, § 32-7-23(c). Section 32-7-23(c) provides, "The recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract." Stacking is limited to one policy or contract of insurance. State Farm Mut. Auto.Ins. Co. v. Fox, 541 So.2d 1070 (Ala. 1989).
Powell argues that the Ford Escort was automatically covered under the newly-acquired-motor-vehicle provision in the undisputed Oldsmobile policy, and that she should be allowed to stack coverage under that provision. The Oldsmobile insurance policy provides: "This coverage does not apply if there is other uninsured motor vehicle coverage on a newly acquired car." Powell concedes that the policy on the Oldsmobile excludes uninsured motorist coverage on newly acquired vehicles that are covered by other insurance. However, she argues that she was a permissive driver, not an "insured" under the Auto Owners policy, and therefore, that the exclusion does not apply to her. Powell's argument is without merit. The exclusion stated in the policy does not distinguish between "insured" and "permissive driver." It simply states that there is no uninsured motorist coverage for a newly acquired vehicle that is covered by another insurance policy.
Although our law recognizes the right to stack under a single policy of insurance, Powell was not entitled to the stacking she seeks, because the Ford Escort was excluded from coverage by the fact that it was covered by another insurance policy. The trial court correctly held that the Ford Escort was not covered under the Oldsmobile policy.
Because Powell failed to prove by substantial evidence that State Farm agreed to insure the Ford Escort and because the Ford Escort was not covered under the newly-acquired-motor-vehicle provision of the Oldsmobile policy, the judgment of the trial court is due to be affirmed.
AFFIRMED.
SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.