551 So.2d 914 (1989)
Ernest B. OGLE and Patricia Evans
v.
Jeffrey K. LONG and Preferred Risk Mutual Insurance Company.
87-1376.
Supreme Court of Alabama.
April 28, 1989.
Rehearing Denied September 1, 1989.
David A. Kimberley of Floyd, Keener, Cusimano & Roberts, Gadsden, for appellants.
J. Bentley Owens III of Starnes & Atchison, Birmingham, for appellees.
ADAMS, Justice.
Ernest B. Ogle and Patricia Evans appeal from the denial of their motion for new trial after the trial court entered judgment on a directed verdict in favor of Preferred Risk Mutual Insurance Company on Ogle and Evans's claim, following an automobile accident in Etowah County, against Preferred Risk for payment of uninsured motorist benefits.
Ogle, while driving an automobile owned by his common-law wife Evans (who was a passenger), collided with a tractor-trailer truck driven by Jeffrey K. Long on U.S. Highway 431 near Attalla. After filing a complaint in circuit court against Long and *915 fictitious defendants, alleging negligence in causing the accident, Ogle and Evans attempted service on Long at a post office box in Stantonville, Tennessee. The complaint was returned, however, marked "unclaimed," and Ogle and Evans made service by publication pursuant to Rule 4.2(b)(1)(C) and Rule 4.3, A.R.Civ.P. Long subsequently failed to answer the complaint, and a default judgment was entered against him on July 15, 1987.
Preferred Risk moved to intervene in the lawsuit and to set aside the default judgment after Evans notified it of her intention to file a claim for uninsured motorist coverage under the terms of her insurance policy. The trial court granted Preferred Risk's motion, set aside the default judgment, and joined Preferred Risk as a party defendant. On October 21, 1987, Preferred Risk filed its cross-claim against Long, demanding judgment for any amount recovered against it by Ogle and Evans; service was attempted at Long's Stantonville, Tennessee, post office box (the record does not indicate whether this service was successful.) After discovery, the lawsuit moved to trial on April 4, 1988, without Long appearing.
At the close of plaintiffs' evidence, Preferred Risk moved for a directed verdict on grounds that Ogle and Evans had failed to prove that Long was uninsured at the time of the accident. The trial court denied the motion before hearing Preferred Risk's evidence, but granted the motion when it was renewed by Preferred Risk at the close of the evidence, and after hearing argument from both parties. Ogle and Evans's motion for new trial, based on grounds that evidence existed to infer that Long was uninsured at the time of the accident, was denied. The issue for our review is whether the trial court properly denied the motion for new trial after entering judgment on a directed verdict for Preferred Risk.
Although Ogle and Evans challenge by motion for new trial the weight of the evidence as considered by the trial court in making its determination that they failed to prove Long's status as uninsured, we must return to the directed verdict to test the sufficiency of the evidence surrounding Long's status. The standard of appellate review applicable to a motion for directed verdict is identical to the standard used by the trial court in granting or denying the motion initially. Thus, when reviewing the trial court's ruling on the motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the nonmovant. Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988).
The threshold question is whoOgle and Evans or Preferred Riskbore the burden of proving the uninsured status of Long. Preferred Risk argues that the burden of proof lies with Ogle and Evans, and that they failed to present any evidence of Long's status; Ogle and Evans argue that the cumulative effect of Long's failure to answer the complaint, to respond to discovery, and to appear for trial; their attempts to investigate Long's status as uninsured; and Preferred Risk's failure to present any evidence contradicting their allegation that Long was uninsured, raise a presumption of uninsured status that Preferred Risk must rebut.
Although Ala.Code 1975, § 32-7-23 ("Uninsured motorist coverage; `uninsured motorist' defined; limitation on recovery") is silent on this point, the plaintiff generally has the burden of proving that the tort-feasor was uninsured. Appleman, Insurance Law and Practice § 5087 (1981). This burden of proof is recognized in Alabama. Barnes v. Tarver, 360 So.2d 953 (Ala.1978) ("[e]very jurisdiction which has considered the issue holds that the burden of proving entitlement to coverage under an uninsured motorist endorsement is upon the claimant"). (Citations omitted.) See, also, Lefeve v. State Farm Mut. Auto. Ins. Co., 527 F.Supp. 492 (N.D.Ala.1981) ("It is clear that a party making a claim for uninsured motorist coverage must prove that the vehicle which injured him was in fact uninsured. See generally, Annot., 26 A.L. R.3d 883, 892 (1969)").
An exception is recognized, however, if the plaintiff used reasonable diligence to *916 ascertain the uninsured status of the tort-feasor and such information was unobtainable. The burden of going forward with the evidence is then cast upon the defendant. Appleman, Insurance Law and Practice, supra. In State Farm Mutual Automobile Ins. Co. v. Matlock, 462 S.W.2d 277 (Tex.1970), the Texas Supreme Court held that where an insured claiming benefits under uninsured motorist coverage presents proof that all reasonable efforts have been made to ascertain the insured status of the tort-feasor and that such efforts have proven fruitless, in the absence of affirmative proof by the insurer an inference may be drawn that there is in fact no insurance policy covering the tort-feasor. This exception was applied by the Court of Civil Appeals in State Farm Mutual Automobile Ins. Co. v. Griffin, 51 Ala.App. 426, 286 So.2d 302 (1973).
Consequently, our review shifts to the question of what actions constitute "reasonable diligence" by the insured to ascertain the insured status of the tort-feasor:
"The evidence of noninsurance may be sufficient where there appears in evidence an admission of the insurer, its claims manager, or agent. Since it is the task of an adjuster to seek out all relevant information, his statement that he could find no evidence of insurance certainly should have probative value. ...
"When it comes to matters of proof, it seems obvious that the ones having the greatest knowledge upon this subject are the owner and driver of the vehicle which injured the persons insured under the UM coverage. That being true, certainly an affidavit, deposition, or even letter to the effect that they were uninsured at the time of the occurrence should control, although it must pertain to the time of the occurrence. ...
"While it has been held that the records of a state department may properly be received in evidence, one court held that evidence of an employee of the state insurance department that there were no records of any insurance coverage upon the tortfeasor would not suffice. This result clearly would be proper where one might be covered by private insurance not required to be registered; in any situation where a record should be on file, this would seem to be the only method of proving a negative. It is proper to show an order of revocation, which is presumed to continue in the absence of evidence to the contrary. ..."
Appleman, Insurance Law and Practice §§ 5087.15, 5087.25, and 5087.35 (1981).
The record reflects that Ogle and Evans unsuccessfully attempted to serve Long at a Stantonville, Tennessee, post office box and took a default judgment against him after he failed to answer the complaint following service by publication. It appears from the record that after intervention by Preferred Risk and the focusing of the lawsuit on the insured status of Long, Ogle and Evans undertook no further investigation of Long to determine his status. In fact, at trial, counsel for Ogle and Evans argued, "[I]f [Long] will not respond to my lawsuit, I certainly can't take his deposition. That ends my responsibility. All I have got to do is file my lawsuit and wait for his response, or his carrier's response. And in that I had the request for admissions, `Are you insured?' It was ignored as well."
We do not believe that merely filing the lawsuit and taking a default judgment against the tort-feasor after he fails to answer the complaint and respond to discovery is sufficient to demonstrate "reasonable diligence" in ascertaining and proving the tort-feasor's status as uninsured. The claimant must go further to meet his burden. For example, in State Farm Mutual Automobile Ins. Co. v. Griffin, supra, the Court of Civil Appeals held that testimony by the insurer's adjuster that he investigated the collision involving the plaintiff's vehicle and did not find a policy of liability insurance in force on the defendant's vehicle was sufficient to provide a scintilla of evidence on the defendant's status as uninsured. Our record in the instant case reflects that Ogle and Evans failed to call Preferred Risk's adjuster to testify as to his investigation of Long's status.
Further, Ogle and Evans developed testimony at trial that Long, at the scene *917 of the accident, had produced a number of insurance papers from Harco National Insurance Company for the investigating state trooper. They failed, however, to procure an affidavit or letter from any officer or employee of Harco National as to Long's insured status. In fact, Ogle and Evans brought such an affidavit to the trial court's attention only in support of their motion for new trial, after judgment had been entered. Finally, Ogle and Evans did not contact insurance or motor vehicle authorities in Tennessee to investigate if or when Long had obtained liability coverage (notwithstanding the fact that insurance could have been obtained in another state, searching in Tennessee would be sufficient to demonstrate an effort to investigate Long's status).[1]
Therefore, viewing the evidence most favorably to them, we hold that Ogle and Evans failed to produce any evidence of a reasonably diligent investigation sufficient to raise a presumption that Long was uninsured and to cast upon Preferred Risk the burden of going forward with the evidence. Thus, insufficient evidence existed to produce a conflict warranting jury consideration. Further, we hold that the trial court was not in error in refusing to consider as newly discovered evidence an affidavit from Harco National in support of Ogle and Evans's motion for new trial. With any amount of diligence, the affidavit could have been procured and produced during the trial of the lawsuit, and Ogle and Evans fail to demonstrate that the trial court abused its discretion in its ruling. Beaty v. Head Springs Cemetery Ass'n, Inc., 413 So.2d 1126 (Ala.1982).
AFFIRMED.
MADDOX, ALMON, HOUSTON and STEAGALL, JJ., concur.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., dissent.
HORNSBY, Chief Justice (dissenting).
The standard of review for a directed verdict is:
"A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214 (Ala.1978). ...
"In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975); Vintage Enterprises, Inc. v. Cash, 348 So.2d 476 (Ala. 1977)."
Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 856 (Ala.1981). See also Ritch v. Waldrop, 428 So.2d 1 (Ala.1982). The plaintiffs were required to submit a scintilla of evidence in support of their claim that the tort-feasor was not insured.[1] I agree with the majority that the proper standard is whether the plaintiffs used reasonable diligence to ascertain the uninsured status of the tort-feasor.
"The question of the burden of proof to establish that a motorist is uninsured is one of first impression with this court. The majority of jurisdictions which have considered the question have consistently placed the initial burden of proving the motorist was uninsured on the claimant. Mindful of the difficulty of proving a negative, many courts have relaxed the burden by adjusting the quantum of proof necessary. For a discussion of the nature of the problem and an analysis of the recent decisions, see Widiss, A Guide to Uninsured Motorist Coverage, § 2.39, p. 77. Typical of the reasoning adopted *918 by many courts is the following statement in [Merchants Mut. Ins. Co. v. Schmid,] 56 Misc.2d 360, 288 N.Y.S.2d 822 [Sup.Ct.1968]:
"`Since the absence of insurance upon the offending vehicle and its driver is a condition precedent to the applicability of the uninsured driver indorsement, we hold that the burden of proving such absence is upon the claimant. However, we must keep in mind that proving a negative is always difficult and frequently impossible and that, consequently, the quantum of proof must merely be such as will convince the trier of the facts that all reasonable efforts have been made to ascertain the existence of an applicable policy and that such efforts have proven fruitless. In such an event, and absent any affirmative proof by petitioner, the inference may be drawn that there is in fact no insurance policy in force which is applicable." (pp. 362, 363, 288 N.Y.S.2d p. 825).'"
Van Hoozer v. Farmers Insurance Exchange, 219 Kan. 595, 611-12, 549 P.2d 1354, 1367 (1976); Appleman, Insurance Law and Practice, § 5087 (1981); Annot., Insurance"Uninsured" Motorist, 26 A.L.R.3d 883 (1969).
I believe that the plaintiffs met their burden and presented sufficient evidence to take the case to the jury.[2] While the evidence and arguments presented suggesting the lack of diligence on the plaintiffs' behalf would justify the jury's determining that the plaintiffs did not exercise due diligence, I can not say that the plaintiffs' claim should be denied as a matter of law. Plaintiffs presented evidence showing that the tort-feasor initially could not say whether he was insured. Trooper Bryant testified that an investigation of papers contained in the tort-feasor's vehicle was initially inconclusive on the question of whether the tort-feasor was insured, but Bryant eventually concluded that he was. In addition, the tort-feasor failed to file an answer to the plaintiffs' complaint and request for admissions as to the existence of insurance, and the plaintiffs took a default judgment. While various inferences could be drawn from this fact, I believe the jury was free to infer that the tort-feasor did not respond because he was uninsured.
In summary, I believe that the plaintiffs presented sufficient evidence to withstand the defendant's motion for a directed verdict.
JONES, SHORES and KENNEDY, JJ., concur.
NOTES
[1] We note that our holding in this case does not affect our "hit and run" phantom-driver rule, whereby the unknown owner or operator of a vehicle causing an accident is presumed uninsured. See Wilbourn v. Allstate Insurance Co., 293 Ala. 466, 305 So.2d 372 (1974). We also note that Ogle and Evans's counsel on appeal did not serve as counsel during the trial of this case.
[1] This action was filed before June 11, 1987; therefore the "scintilla rule" applied. See Code 1975, § 12-21-12.
[2] While I agree that the plaintiff has the burden of proof, the quantum of proof necessary to create a jury question must not be overly burdensome. If the insurer must pay, it presumably has subrogation rights. If there is an erroneous finding that the tort-feasor is uninsured, i.e., if in fact he is insured, the uninsured motorist coverage carrier can easily recover against the tort-feasor's insurer.