This case presents the question whether an insured did all he reasonably should have done to show that the tort-feasor/driver and the owner of the vehicle he was driving were uninsured, to shift the burden of proof to the carrier of uninsured motorist coverage to prove that the tort-feasor and owner were, in fact, insured. See Ogle v. Long, 551 So.2d 914 (Ala. 1989).
In August 1986, Amanda T. Steward and Joseph Hunter III were involved in an automobile accident. Steward incurred injuries and subsequently died from the injuries she received in the accident, which was caused by the alleged negligent actions of Hunter. Steward's daughter, Janice Williams, acting as administratrix of Steward's estate, sued Hunter[1] and Motors Insurance Corporation ("MIC"), Steward's carrier of uninsured motorist insurance.
After the jury returned a verdict in favor of the plaintiff, MIC filed a motion for a judgment notwithstanding the verdict or in the alternative for a new trial, which was denied. On appeal, MIC contends that the plaintiff failed to prove that Hunter was uninsured or that the owner of the vehicle was uninsured and therefore failed to qualify for uninsured motorist coverage.
Under Alabama law, the term "uninsured motor vehicle" includes vehicles in which neither the owner nor the operator carries bodily injury liability insurance. Ala. Code 1975, §32-7-23. In order to prove coverage under this section, Williams has the burden of showing that the tort-feasor, Hunter, was uninsured. Barnes v. Tarver, 360 So.2d 953, 956
(Ala. 1978) ("[e]very jurisdiction which has considered the issue holds that the burden of proving entitlement to coverage under an uninsured motorist endorsement is upon the claimant"). Williams must prove not only that the tort-feasor driver was uninsured, but also that the owner of the vehicle was uninsured. Higgins v. Nationwide Mutual Ins. Co., 291 Ala. 462,282 So.2d 301 (1973).
Williams acknowledges her burden of proving that Hunter was uninsured, but submits that she falls within the exception adopted by this Court in Ogle, where the Court recognized an exception to the general rule that the burden of proof rests upon the claimant. The Court stated that if the claimant can show that he used "reasonable diligence" to ascertain the uninsured status of the tort-feasor and such information was unobtainable," the burden would shift to the carrier of uninsured motorist coverage to prove that the tort-feasor was, in fact, insured. 551 So.2d at 915-16. Therefore, if Williams used "reasonable diligence" to ascertain that Hunter was uninsured, then the burden is cast upon MIC to go forward with evidence that the tort-feasor/driver and the owner of the vehicle were, in fact, insured.
In the Ogle case, the court granted the defendant insurer's motion for a directed verdict, finding that Ogle and Evans, the plaintiffs, had failed to produce evidence of a reasonably diligent investigation sufficient to raise a presumption that the tort-feasor was uninsured. 551 So.2d at 917. The record reflected that the plaintiff had *Page 220 
attempted to serve the alleged tort-feasor at a post office box and had then obtained a default judgment against him when he failed to answer the complaint following service by publication.[2]
The Court stated:
 "We do not believe that merely filing the lawsuit and taking a default judgment against the tort-feasor after he failed to answer the complaint and respond to discovery is sufficient to demonstrate 'reasonable diligence' in ascertaining and proving the tort-feasor's status as uninsured. The claimant must go further to meet his burden."
551 So.2d at 916.
The facts in the present case differ substantially from those in Ogle. The record reflects that Williams hired a process server, a Mr. York, to try to locate Hunter. The address at which Williams requested service was obtained from the police incident report. York went to the house at that address and discovered that the house was vacant. York then asked a neighbor and a postman in the neighborhood if they knew where the residents of the vacant house had moved. He received a negative response from both.
In addition to the street address that was on the incident report, the attorneys for Williams gave York a second possible address for Hunter. York discovered that this address was the former residence of an uncle with the same name, whose whereabouts were unknown to the residents. At the suggestion of the residents, York went to the home of Hunter's mother. This suggestion proved to be fruitless, for his mother said she had not seen Hunter recently and did not know where he was.
York also checked the city directories for the cities of Mobile and Prichard and found nothing. He checked at the tag registration offices and telephoned several "Joseph" or "J. L. Hunters," but did not locate the Joseph Hunter III on whom service was to be made.
York later went back to the uncle's former residence to see if the residents knew where Hunter worked. He also returned to the mother's house to learn if Hunter was married, and found out that he was not.
Williams's complaint and summons were returned "NOT FOUND." Not only was Williams unable to find Hunter, but MIC also was unable to serve process on him. The record reveals that the cross-appeal filed by MIC was also returned "NOT FOUND."
In addition to the evidence of York's attempts to locate Hunter, the jury also had before it the statement of the plaintiff's attorney that he had called the state insurance department and had received no guidance from it:
 "Mr. Sherling [attorney for Williams]: Judge, . . . I would like to make a proffer to the Court that I personally contacted the state insurance department in an attempt to locate Mr. Hunter and was advised by the insurance department that they had no records of who had insurance and who did not have insurance and that they would have no way of helping me in trying to locate Mr. Hunter.
 "Mr. Peterman [attorney for MIC]: Your Honor, I'm going to object to Mr. Sherling's testimony in court today concerning his actions in the case. There's no opportunity to cross-examine —
"THE COURT: You can cross-examine him.
 "Mr. Peterman: — Mr. Sherling about what else he did and what he didn't do. My objection is to him being a witness in the case, essentially.
"THE COURT: Overruled."
MIC argues that this statement was not evidence and that it prejudiced the interests of MIC in the eyes of the jury. This argument has no merit, for although *Page 221 
there was a general objection to Sherling's capacity to be a witness, there was no objection to the statement itself or a motion to exclude the alleged improper remark. Clearly, Sherling was competent to be a witness in this case. Ala. Code 1975, § 12-21-161; see also McGehee v. Hansell, 13 Ala. 17
(1848) (the attorney for a party is a competent witness for him, unless interested). The objection was properly overruled on the ground asserted.
MIC argues that the trial court's refusal to admit into evidence the title history of the automobile was prejudicial error. Williams's counsel specifically objected at trial to the admission of this into evidence:
 "I would object on the grounds I have not seen those documents prior to the [trial] today. And I don't believe [this offer] complies with the pretrial order. There would be — it would be incumbent upon Mr. Peterman to anticipate that my evidence was going to rely upon the information in the accident report that this man was the owner of the vehicle. And anything to the contrary should have been presented to the Court prior to today. If I had had that information prior to today, there's an indication of a Shirley Hunter living at 1600 Carlton Avenue which was the address of the Defendant on that date. Mr. York went to that address. He could have inquired to whether there was a Shirley Hunter at that address on that visit if we had this information.
 "Mr. Peterman: In response to that, I would just say this information I was not going to offer this into evidence until the officer's testimony concerning his knowledge of the title and ownership of that car. And this is information that Mr. Sherling could have easily gotten as I did by writing the Department of Motor Vehicles in Montgomery and requesting that information.
 "THE COURT: I sustain the objection to the evidence."
It is well established that rulings as to the admissibility of evidence such as that involved in this case, rest largely within the discretion of the trial court and will not be disturbed on appeal in the absence of a showing of abuse of that discretion. Russellville Flower Craft, Inc. v. Searcy,452 So.2d 478, 480 (Ala. 1984). Furthermore, the general pre-trial order in this case specified:
 "[D]ocuments, exhibits or physical evidence not timely exhibited to or made available to other parties prior to trial under this order will not be admitted into evidence at the trial unless solely for impeachment purposes or unless the ends of justice so require."
We hold that the trial judge did not err in excluding the evidence.
We further hold that the plaintiff presented substantial evidence to the jury regarding the ownership of the automobile driven by the tort-feasor. The policeman who investigated the accident testified that he determined that Hunter was the owner of the automobile by running a tag check, which showed the car as being registered to Hunter. It was certainly reasonable for Williams to rely upon the information furnished by the policeman.
We now address the main issue in this case, whether the plaintiff presented sufficient evidence to allow the jury to find that Hunter was uninsured.
Because of the difficulty of proving a negative, the initial burden of proving the motorist was uninsured is somewhat relaxed. See Widiss, A Guide to Uninsured Motorist Coverage, § 2.39 at 77 (1969). The quantum of proof must be enough to convince the trier of fact that all reasonable efforts have been made to ascertain the existence of an applicable policy and that those efforts have proven fruitless. Ogle v. Long, 551 So.2d at 918 (Hornsby, C.J., dissenting). In this case, the jury had substantial evidence that Williams acted with reasonable diligence in attempting to ascertain whether Hunter was insured.
While we hold in this case that there was substantial evidence that the plaintiff had exercised reasonable diligence *Page 222 
in attempting to ascertain whether the tort-feasor was insured, and that the question whether he was insured was thus properly submitted to the jury, we should not be understood as saying that in another setting this evidence would be enough. That determination must be made upon the facts in each case. Just as we noted in Ogle, an admission by the insurer or its agent would clearly have probative value on the question whether the tort-feasor was insured. 551 So.2d at 916. Furthermore, an "affidavit, deposition, or even letter [from the owner or driver of the automobile] to the effect that they were uninsured at the time of the occurrence should control, although it must pertain to the time of the occurrence." Id.
On a motion for a directed verdict or for a new trial or for j.n.o.v., the evidence is to be viewed most favorably to the nonmovant, here the plaintiff. Bussey v. John Deere Co.,531 So.2d 860, 863 (Ala. 1988). Viewing the evidence most favorably to Williams, we hold that she produced substantial evidence of a reasonably diligent investigation sufficient to raise a presumption that Hunter was uninsured and to cast upon MIC the burden of going forward with the evidence by showing that the driver or the owner of the automobile was, in fact, insured. Thus, sufficient evidence existed to produce a conflict warranting the jury's consideration.
Therefore, MIC's motion for a directed verdict was properly denied. The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] Hunter was never served with either the original complaint or with the cross-claim filed against him by MIC; both were returned "Not Found," with a notation indicating that Hunter had moved. Williams proceeded with her case against MIC. The law is clear that the insured is not required to first sue the uninsured motorist, but may directly sue the carrier of the insurance. State Farm Mut. Automobile Ins. Co. v. Griffin,51 Ala. App. 426, 286 So.2d 302 (1973).
[2] Preferred Risk, the carrier of uninsured motorist coverage, had moved to intervene in the lawsuit and to set aside the default judgment after the plaintiff notified it of her intention to file a claim for uninsured motorist coverage under the terms of her insurance policy. The trial court granted Preferred Risk's motion, set aside the default judgment, and joined Preferred Risk as a party defendant.