SHORES, Justice.
The plaintiffs appeal from a judgment entered on a directed verdict for the defendant in a medical malpractice case. The issue is whether the trial court erred in refusing to allow the plaintiffs, Dwight and Cathy Wiginton, to admit an unsigned deposition of a medical expert taken by defense counsel. We affirm.
On May 15, 1986, Dwight Wiginton consulted Dr. Hagler in regard to a darkened, thickened spot of skin on his right thigh. Wiginton also complained that the area was itching and stinging. Hagler diagnosed the spot as “jock itch” and prescribed Ly-prox cream. The medication relieved the itching, but the spot remained discolored and thick. On January 20, 1987, Wiginton again consulted Dr. Hagler regarding the spot, and Hagler gave the same diagnosis and medication.
On November 23,1988, Wiginton told Dr. Hagler that the spot had grown, and Dr. Hagler diagnosed the problem as a venereal wart. Dr. Hagler prescribed “podophyl-lum 20%.” Wiginton used the medication for a week, but the spot remained unaffected and the surrounding skin was irritated. Dr. Hagler told Wiginton to discontinue using podophyllum and prescribed Mercurochrome.
Because Dr. Hagler’s office was closed when Wigginton went back to see Dr. Ha-gler in June 1989, Wiginton consulted Dr. Charles Womack. Dr. Womack told Wigin-ton that he did not know what the spot was and arranged for a consultation with a surgeon, Dr. Robert Long. Because the spot had increased in size, Long performed a biopsy for analysis. The results of the biopsy indicated that the lesion was a rare form of cancer. In July 1989, Dr. Long excised the tumor and also had to remove a wide margin of tissue surrounding the affected area.
*6 On November 29, 1989, Dwight Wiginton sued Dr. Hagler pursuant to Alabama Code 1975, § 6-5-548, alleging medical malpractice. His wife, Cathy Wiginton, also sued Dr. Hagler, alleging loss of consortium.
On April 30, 1990, the Wigintons complied with Rule 26(b), A.R.Civ.P., and designated Dr. Elliott B. Oppenheim as their expert medical witness. In the Rule 26(b) designation, the Wigintons stated:
“The subject matters of Dr. Oppenheim’s testimony are expected to include: (1) The standards of care applicable to diagnosis and treatment of cancer; (2) the care received by the patient; and (3) the relationship between the care received by the patient and the patient’s condition. “The facts and opinions to which Dr. Oppenheim is expected to testify may include the following: (1) Had the defendant diagnosed and treated plaintiff’s cancer in a timely manner, plaintiff’s surgery would not have been as extensive and he would not have the physical problems which the surgery has and will cause him to experience.”
Dr. Hagler noticed the taking of Dr. Op-penheim’s deposition, and he was deposed in Bellevue, Washington, on May 30, 1990. The parties and the witness did not stipulate to any waiver of the requirement that the deponent review and sign the deposition. The transcript contained an affidavit for Dr. Oppenheim to sign, which stated: “I have read my deposition, and the same is true and accurateHe did not sign that affidavit.
On October 8, 1990, a pre-trial conference was held. No record was made of this conference. The plaintiffs allege in their brief that the defendant raised no objections to the use of Dr. Oppenheim’s deposition and did not try to suppress the use of the deposition. However, there is no indication that the plaintiffs indicated any intention to offer Dr. Oppenheim’s deposition as evidence in the case.
On October 18, 1990, the trial commenced. The plaintiffs first offered the deposition of Dr. Hall, one of the defendant’s designated experts. The plaintiffs then announced that Dr. Oppenheim would
not be present but that his deposition would be introduced.
Once the jury was sworn, the deposition of Dr. Garland Hall, Jr., was read in order to establish the standard of care. Dr. Hall was the defendant’s designated medical expert witness. Following the reading of Dr. Hall’s deposition, the plaintiffs sought to introduce Dr. Oppenheim’s deposition into evidence. The defendant objected because it was unsigned and did not satisfy A.R.Civ.P. 30(e). The trial court sustained the objection.
The plaintiffs tried two more times to introduce the Oppenheim deposition, but the trial court continued to sustain the defendant’s objection. When the plaintiffs rested their ease-in-chief, the defendant submitted a written motion for directed verdict. On October 19, 1990, the trial court granted the defendant’s motion. The trial judge told the jury:
“As I understand the law at this point, the burden is on the plaintiffs to prove, by substantial evidence, that the defendant failed to exercise such reasonable care, diligence, and skill as physicians in the same general line of practice ordinarily have and exercise in a like case_ I have focused on the deposition of Dr. Garland Hall, particularly at pages 28 to 32, in looking for what the duty would be in this line of practice and in a like case, and it is the Court’s judgment that the plaintiffs have failed to meet that burden of substantial evidence.”
The plaintiffs appeal.
The plaintiffs sued the defendant under § 6-5-548(a), Code of Alabama 1975. Section 6-5-548(a) states:
“[T]he plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.”
By granting the defendant’s motion for a directed verdict, the trial court held that *7 the plaintiffs had not met the required standard of proof.
“The standard of appellate review applicable to a motion for directed verdict is identical to the standard used by the trial court in granting or denying the motion initially. Thus, when reviewing the trial court’s ruling on the motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the nonmovant. Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988).”
Ogle v. Long, 551 So.2d 914, 915 (Ala.1989). After careful review of the record, we hold that the trial court did not err in directing a verdict for the defendant.
The plaintiffs argue that the trial court erred in sustaining the defendant’s objection to the plaintiffs’ admission of Dr. Oppenheim’s deposition, but they cite no authority for that argument. The trial court correctly sustained the objection, because this deposition did not comply with the requirements of A.R.Civ.P. 30(e), which states:
“(e) Submission to Witness; Changes; Signing. When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the witness within 30 days of its submission to him, the officer shall sign it and state on the record the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed unless on a motion to suppress under Rule 32(d)(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.”
The parties did not stipulate to a waiver of the signature requirement. Dr. Oppenheim did not refuse to sign it, nor did the plaintiffs try to get an officer to sign it.
The plaintiffs say that the defendant waived his objection to the signature requirement because he did not make a motion to suppress at the pre-trial conference, pursuant to A.R.Civ.P. 32(d)(4). That rule states:
“(4) As to Completion and Return of Deposition. Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed or otherwise dealt with by the officer under Rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.”
The plaintiffs’ argument misses the point. There is nothing to indicate that the plaintiffs suggested at the pre-trial conference that they intended to introduce Dr. Oppenheim’s deposition. It was only after the trial had begun that they indicated that, instead of having Dr. Oppenheim testify in person as they had earlier indicated they would do, they intended to offer his unsigned deposition. The defendant objected immediately. The objection was timely, because it came at the first indication from the plaintiffs that they intended to introduce this deposition. Both parties were present when Dr. Oppenheim was deposed; therefore, both parties had knowledge that there was no stipulation of a waiver of the requirement for a signature.
In this case, the defendant deposed Dr. Oppenheim, the plaintiffs’ designated expert, but did not intend to use his deposition as evidence at trial. There was no duty on the part of the defendant to obtain his signature and thus make the deposition meet the requirement for admission. Under these circumstances, we can not hold that the trial court erred in refusing to *8 allow the admission of the unsigned deposition.
The judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.