Lois KREMER and Robert Kremer,
Plaintiffs and Appellees,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Defendant and Appellant.

No. 17738.

Supreme Court of South Dakota.

Considered on Briefs Oct. 8, 1992.

Decided June 9, 1993.

As Corrected June 21, 1993.

Reconsideration Denied July 14, 1993.

John J. Delaney of Johnson/Huffman, Rapid City, for appellees.

Robert L. Morris of Quinn, Eiesland, Day & Barker, Belle Fourche, for appellant.

ERICKSON, Circuit Judge.

American Family Insurance (American) appeals an amended declaratory judgment resolving the rights and duties of the parties and a money judgment to its insured Lois Kremer (Kremer) and Robert Kremer. We affirm.

## FACTS

Kremer was involved in an automobile accident with Gary P. Schmit (Schmit) on February 13, 1986. She promptly notified her American insurance agent and informed him that Schmit was uninsured. That information was forwarded to American. American's investigator interviewed Kremer on March 5, 1986, and again the information that Schmit was uninsured was furnished to American. American paid certain medical bills, as well as collision loss.

On February 8, 1989, Kremer called American and spoke with a casualty claims specialist who was authorized to settle her suit and specifically requested settlement under the "uninsured motorist" provisions of her American policy. This specialist told her that the claim would be denied because American felt both she and Schmit were negligent. Kremer told him that she would see her own attorney.

On February 13, 1989, Kremer filed a lawsuit against Schmit for damages resulting from the accident. An American internal memorandum records that at least as early as June 28, 1989, American was well aware of Kremer's action against Schmit. Additionally, the memo acknowledges that American knew Schmit was uninsured; knew Kremer had been told her "uninsured motorist" claim would not provide coverage; knew Kremer's attorney had asked for and was provided a recap of monies paid by American to prove her damages in the lawsuit; and that the claims specialist had discussed the company's subrogation rights with American's in-house attorney.

In April 1989, Kremer's original attorney, Peter A. Fuller (Fuller), met with Schmit, who was not represented. Schmit was asked to confess judgment and was told that the judgment would not be executed on since Kremer would proceed to obtain "uninsured motorist" benefits from American. Schmit refused to confess judgment.

On October 16, 1989, the date set for a default judgment hearing, one of Kremer's attorneys called American's representative to update information concerning Kremer's medical bills that American had paid. At that hearing, Schmit appeared, unrepresented, and contested the default. Default judgment was granted, and, on November 23, 1989, the default judgment against Schmit was entered.

Fuller purposely waited seventy-eight days after taking the default judgment before notifying American that default judgment had been entered and requesting $100,000 under the "uninsured motorist" provisions of the policy. The claim was denied.

On March 20, 1990, Kremer brought this declaratory judgment action to declare the rights and responsibilities of the parties under the "uninsured motorist" provisions of the American policy.

Trial before an advisory jury in May 1991, determined that American had sufficient notice of the Kremer/Schmit lawsuit to allow it to protect its interests. Subsequently, the trial court entered findings of fact, conclusions of law and an order adopting the jury's findings. Pursuant to SDCL 21–24–12 the trial court entered a money judgment in the amount of $100,000 plus interest.

American appeals from that judgment, citing eight issues, three of which deal with the findings of sufficient notice. The remainder deal with the issues of collusion, hearsay testimony, amendment of the pleadings, instruction to the advisory jury, and computation of pre-judgment interest.

## I. SUFFICIENCY OF NOTICE AND "CONSENT TO BE BOUND" UNDER THE POLICY PROVISIONS

American argues that the policy provisions regarding notice of lawsuits were not followed, and thus it should not be bound.

At the beginning of the American policy, a general provision entitled "Other Duties" states:

A person *claiming any coverage* of this policy must also:

> \*     \*     \*     \*     \*     \*

2. Send us any legal papers *received* relating to any claim or suit. (emphasis provided).

A more specific policy provision found in "Part III Uninsured Motorists," merely states that a person bringing suit to determine liability against an uninsured motorist must:

1. Name the owner or operator of the vehicle as the defendant.
2. Notify the company of the suit.
3. Receive the company's written consent to be bound by the resulting judgment.

## A. SUFFICIENCY OF NOTICE TO AMERICAN OF THE UNDERLYING SUIT

Under South Dakota law, "notice may be either actual or constructive." SDCL 17–1–1. At issue is whether or not American had notice of circumstances sufficient to put a prudent person upon inquiry as to the existence of the Kremer/Schmit lawsuit. SDCL 17–1–4. Both the advisory jury and the trial court agreed that American had sufficient notice.

A trial court's finding of fact must be upheld unless it is clearly erroneous. Smith v. Sponheim, 339 N.W.2d 899, 901 (S.D.1987). The function of this court under that standard is:

> [T]o determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law, or whether considering the entire record, we are left with a definite and firm conviction that a mistake has been made. (citation omitted). In making this determination, we review the evidence in a light most favorable to the trial court's decision.

*State v. Baysinger*, 470 N.W.2d 840, 843 (S.D.1991).

American's policy has two notice provisions. The first is a "general" notice provision while the second is a "specific" notice provision relating to "uninsured motorists." American insists that both provisions must be read together.

■ Notice provisions are to be strictly construed against the insurer. *Breeden v. Etna Life Ins. Co.*, 23 S.D. 417, 122 N.W. 348, 349 (1909). "[W]here the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be

adopted." *Prokop v. North Star Mut. Ins. Co.*, 457 N.W.2d 862, 864 (S.D.1990).

■ American's policy set out specific conditions precedent to be used in relation to "Part III—Uninsured Motorists." This more specific provision, Part III, governs this lawsuit. If an insured brings suit to determine liability against an uninsured motorist, the owner or driver must be named as the defendant and the company must be notified. No specifics are set out as to how this notice is to be made. Reference back to the general notice provisions is not made. Written notice is not specified. Thus, oral notice would suffice. *Wolff v. Royal Ins. Co. of America*, 472 N.W.2d 233, 236 (S.D.1991).

■ American knew as early as March 5, 1986, that Schmit was uninsured. Prior to filing suit, Kremer made an oral claim for "uninsured motorist" coverage to American which was orally refused. American knew she was consulting her own attorney. As early as June 28, 1989, almost five months before default was taken, American had discussed the Kremer/Schmit lawsuit with its local agent. American provided Kremer's attorneys with a recap of medical damages paid under the policy for use in the lawsuit. It also discussed with in-house counsel its subrogation rights if Kremer was to recover.

Based upon these facts, American has not demonstrated that the trial court's findings and conclusions on this issue are clearly erroneous.[1]

## B. THE "CONSENT TO BE BOUND" PROVISION

The trial court held that the "consent to be bound" provision of the insurance contract was void as against public policy.

The legislative intent of an "uninsured motorist" statute is "to protect the insurance consumer, not the policy vender." *Rodman v. State Farm Mutual Automobile Ins. Co.*, 208 N.W.2d 903, 909 (Ia.1973).

The purpose of the uninsured motorist statute is to provide the same insurance protection to the insured party who is injured by the uninsured or unknown motorist that would have been available to him had he been injured as a result of negligence of a motorist covered by the minimum amount of liability insurance.

*Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 29 (S.D.1978).

American acknowledges that a "consent to be sued" provision would be void, but argues this provision is necessary to prevent collusion between the insured and the "uninsured motorist." Additionally, it argues a "consent to be bound" provision is different than a "consent to be sued" provision because it does not preclude coverage; rather, it merely precludes payment.

■ Generally, "consent to be sued" provisions have been held to be void, in the absence of an enforceable arbitration clause, because it is against public policy to preclude a court determination of fault and damage in a suit against an uninsured motorist. *Allstate Insurance Company v. Pietrosh*, 85 Nev. 310, 454 P.2d 106, 109–110 (1969). Additionally, an insurance company could unreasonably and arbitrarily withhold consent.

■ The court in reviewing a policy provision in light of statutory law treats the statute as if it were actually written into the policy. "The terms of the policy are to be construed in light of the purposes

---

**1.** The dissent concludes that "[t]his case should go back to square one." Unfortunately, that is not within our authority. SDCL 15–26A–6 limits the Supreme Court's authority to only that case which is specifically before it on appeal. In this instance, that case is Kremer v. American Family Mutual Insurance Company, Lawrence County Civ. #90–127. If this court finds, as a matter of law, that there was insufficient notice, this case is then over. There is no "square one" to go back to. To go back to "square one," this court would have to order

that Kremer v. Schmit, Lawrence County Civ. #89–31, be re-opened.

Hypothetically, had American Family moved to intervene and set aside the default judgment in Kremer v. Schmit at any reasonable time after Fuller gave them actual notice of the default judgment; had been denied; and that denial was now on appeal, I would have been inclined to relieve the default and order a new trial. But American Family chose not to do that. So that option is not within our power to grant.

and intent of the applicable statute." *Veach v. Farmer's Ins. Co.,* 460 N.W.2d 845, 847 (Ia.1990). Whether it is "consent to be sued," or a "consent to be bound," the operative concept is that of "consent" by the insurance company. It is not a question of whether coverage versus payment is precluded, but rather that both provisions are designed to preclude the binding effect of a judgment against the "uninsured motorist" upon the insured's insurance company. *Pietrosh, supra,* at 109.

The "consent to be bound" provision erects an arbitrary barricade which allows an insurance company to eliminate all claims from accidents involving "uninsured motorists," despite the intent of the statute. While prevention of collusion is a laudable goal, other less arbitrary procedural safeguards protect the company. Notice provisions coupled with the company's intervention rights (SDCL 15–6–24(a)(2)) accomplish the same goal in a less onerous manner. Thus, the "consent to be bound" provision like its predecessor the "consent to be sued" provision is not only unnecessary, but contravenes the "uninsured motorist" statute.

### C. WHEN IS IT NECESSARY TO PROVE A MOTORIST IS UNINSURED

American, citing *Griffith v. Farm and City Ins. Co.,* 324 N.W.2d 327 (Ia.1982), and *Ogle v. Long,* 551 So.2d 914 (Ala.1989), argues that in order to recover Kremer must have proven Schmit was uninsured in the original Kremer/Schmit lawsuit. All agree that Kremer did not do so at the original default judgment hearing.

■ The trial court ruled that proving that Schmit was uninsured was a burden Kremer had to meet as a condition precedent to the declaratory judgment action, not the original tort action. A close reading of *Griffith, supra,* discloses that the necessity of proving that the motorist was uninsured was a requirement only in the action against the insurance company, which was filed before the action against the uninsured motorist. In *Ogle, supra,*

evidence of non-insurance became an element of the plaintiff's proof only after the insurance company was allowed to intervene, thus focusing the lawsuit on the insured status of the "uninsured motorist."

Here, the trial court was correct. In the absence of intervention, the plaintiff carries the burden of proving the operator of a vehicle was uninsured as an element of the declaratory judgment action, not the original tort action.

### II. EXCLUSION OF EVIDENCE

■ In response to Kremer's motion in limine, and again at trial, American offered to present evidence which it felt proved there was collusion between attorney Fuller and Schmit, which could have been used to argue that the default judgment was a sham. The trial court excluded this evidence.

In *Wolff, supra,* 472 N.W.2d at 235–236, this Court determined that when an insurer has declined coverage and the insured then settles the case rather than proceeding to trial, bad faith through collusion is a bar to recovery of damages in a subsequent suit brought against the insurance company. "Collusion" is an agreement, often secret, "between two or more persons, whose interests are apparently conflicting, to make use of the forms and proceedings of the law to defraud a third person." Black's Law Dictionary 331 (Rev'd 4th ed. 1968).

It is virtually undisputed that Fuller met with Schmit in April 1989. Schmit was unrepresented. Fuller advised Schmit that he (Schmit) could confess judgment; he would suffer no pecuniary loss; his property would not be executed upon; and Kremer would proceed to obtain "uninsured motorist" benefits from American. Apparently, Schmit indicated he would not contest the matter, but unlike *Wolff, supra,* Schmit refused to sign the confession of judgment document. A follow up letter, relating to the motion for default judgment repeated much the same promises. Despite the promises, Schmit appeared unrepresented and, in some manner, unsuccessfully opposed the entry of default judgment.

The issue is not the reasonableness of American's concerns nor the credibility of the evidence. Nor is it Fuller's intent at the time he talked with Schmit. The question presented to this Court is whether this evidence, *if believed by the trier of the fact,* would have shown collusion between Fuller and Schmit. *State v. Boettcher,* 443 N.W.2d 1, 3 (S.D.1989). No collusion has been shown. American has failed to meet its burden of proving that collusion was an appropriate bar to recovery in light of all the circumstances.[2]

### III. AMENDMENT OF THE PLEADINGS

■ At the end of the first day of testimony, American moved to amend its pleadings to allege collusion between Fuller and Schmit. The trial court denied the motion. The decision to allow amendments to the pleadings is within the discretion of the court. *Beyer v. Cordell,* 420 N.W.2d 767 (S.D.1988). Since American failed to show collusion, there was no abuse of discretion in denying this motion.

### IV. HEARSAY TESTIMONY

Attorney Fuller was called as an adverse defense witness. On direct examination, American's attorney asked about Fuller's first contact with Kremer. In response to questions, Fuller admitted he never served legal papers on the company, and never

specifically notified them of the lawsuit. On cross-examination, he was asked why service and notice were never given. Over objections, Fuller responded saying that it was based upon Kremer's conversation with American's claims analyst. He then was asked what his understanding was of what Kremer had been told. Again, over objection he explained "his understanding."

■ Otherwise inadmissible evidence, including hearsay evidence, may become admissible if the objecting party "opened the door" on direct examination. American's examination of Fuller made these explanations relevant, despite their hearsay nature. *State v. Dale,* 439 N.W.2d 98 (S.D. 1989).

### V. INSTRUCTIONS TO THE JURY

American complains that Advisory Jury Instruction #13 is erroneous because it failed to correctly state the law. It stated:

> No specific requirement exists for the notification specified in the policy. The only requirement is that Kremer[s] notify American Family Insurance Company that they have brought suit against the uninsured motorist.

■ The general rule is that error cannot be predicated upon the giving or refusing of instructions to the advisory jury, unless that error is inextricably tied to the

---

2. The dissent brands Attorney Fuller's conduct a "concealment, deception and a planned violation of due process." Such a conclusion is overblown. While not condoning Attorney Fuller's actions, he was caught in that age-old predicament facing lawyers for years. How do you make reasonable efforts to expedite your client's case (particularly when she has limited finances) and be fair to her insurance company (who with little thought concerning due process has summarily denied her uninsured motorist claim and has, in essence abandoned her, unless of course she recovers and then can press their subrogation rights).

In this instance, American Family's protests ring hollow. "Notice" is not synonymous with service of process. American Family wrote the policy and failed to specify "written notice" of lawsuits against "uninsured motorists," which would have been reasonable. (Instead, they styled it a written "consent to be bound"). From the day of the accident, when it was first reported to their agent, and immediately there-

after, independently investigated by their adjuster, American Family had notice that Schmit was uninsured. Days before the Kremer v. Schmit lawsuit was commenced, American Family knew Mrs. Kremer had made an oral claim to uninsured motorist benefits under their policy. American Family had denied coverage. For months before the default was taken American Family had knowledge that the lawsuit was filed. During the pendency of the lawsuit, American Family's agents cooperated with, spoke with and discussed the progress of the case with Kremer's attorneys. Additionally, American Family's agents and employees packed up their files and trudged into their lawyer's office and planned what to do if Kremer recovered. Then, American Family made a conscious decision to sit and wait. As in *Wolff, supra,* 472 N.W.2d at 238, American Family "was not prejudiced by the lack of written notice." American Family should have intervened.

trial court's erroneous conclusion of law. *Lounsberry v. Kelly,* 32 S.D. 160, 142 N.W. 180, 181 (S.D.1913), modified on rehearing, 32 S.D. 456, 143 N.W. 369 (1913); *Lee v. Schultz,* 425 N.W.2d 380, 383, n. 4 (S.D. 1988). This is not such a case. The instruction and the conclusion of law, in light of all the circumstances concerning the policy notice provisions are substantially correct. The trial court did not abuse its discretion.

## VI. THE APPROPRIATE INTEREST RATE

■ The trial court concluded that interest on this judgment should be computed at 15% per annum, pursuant to either SDCL 54–3–4 or SDCL 54–3–5. American contends that interest should be computed at 12% per annum pursuant to SDCL 54–3–5.1.

This is a declaratory action brought to determine the rights and duties of the parties under an insurance contract, which is an "instrument of writing." Therefore, SDCL 54–3–5, which applies in part to interest due "on any instrument of writing," is controlling. The 15% interest rate is correct.

The trial court is affirmed on all issues.

MILLER, C.J., and HENDERSON, J., specially concur with writings.

WUEST and SABERS, JJ., dissent.

ERICKSON, Circuit Judge, for AMUNDSON, J., disqualified.

MILLER, Chief Justice (concurring specially).

Despite its most persuasive tenor, I am convinced Justice Sabers' dissent is wrong. It is clear to me that there was adequate evidence at the trial from which the advisory jury could conclude (as it did on a vote of 11–1) that American Family did have notice. Their finding (on a vote of 10–2), that the notice was adequate, is also supported by the record.

American Family raises as its first two issues whether there was evidence from which to find there was notice and whether the notice was sufficient. Even though Kremer restates these issues as whether they have "formal" notice, I do not feel this rephrasing warrants condemnation of Kremer or her counsel. From my reading of the briefs and the record, I conclude their rephrasing was done merely because they find the resolution of the questions of notice and its sufficiency to be so clearly correct that they concentrate their argument on the nature of the notice received by American Family. American Family itself expends considerable energy on the nature of the notices it could have received, but did not.

American Family told the trial court, at a hearing on motions for summary judgment, that it was aware there was evidence that American Family had notice, but that the question was what was the weight of that evidence. The jury appropriately answered the question. We have said that "[t]he trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *Wolff v. Royal Ins. Co. of Amer.,* 472 N.W.2d 233, 236 (S.D.1991). I do not think we should ignore the jury and the trial court.

American Family knew Kremer had been involved in an accident with an uninsured motorist. Their files contained sufficient memos from which a reasonable insurance company could easily have determined that it was going to ultimately be held liable under its uninsured motorist provision. More than one month before the underlying default judgment was entered against the uninsured motorist, American Family was made aware of the impending likelihood of a default judgment against the uninsured motorist. Nevertheless, they did nothing. They had time.

A review of the trial transcript reveals an exchange between Lisa Serck, an American Family casualty claim analyst, and Kremer's attorney regarding Lisa's telephone memo wherein she noted that it was her understanding that Kremer was "suing the other company." Lisa stated that she was aware that "sometimes" insurance companies get sued. However, in discussing Lisa's interpretation of her own tele-

phone memo, she agreed with Kremer's attorney that as a "matter of practice and everyday occurrence ... the other driver is sued and not his insurance company." Lisa's understanding was further clarified in the following discourse:

Q And, so, you would know that if Lois is suing as a result of her traffic accident, she couldn't be suing the other company?

A If I knew that the other driver was not insured, that would be a correct statement.

Q And if you even thought that the other driver was insured, you would also know that, no, we don't sue the other company, we sue the other driver; wouldn't you?

A Yes.

Lisa made clear that there was nothing in Kremer's file that indicated the other driver was insured. By Lisa's own testimony, she was not deceived as to what was going on and as to who would be sued. Clearly, due process was satisfied. *See Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

I also cannot help but think that although Fuller's actions, hopes and desires to keep American Family in the dark as much as possible are less than laudatory, the fact remains that American Family *had* notice. The trial judge, before whom this same question was argued on numerous occasions, and at great length, was not persuaded that the motive behind Fuller's alleged attempts to not notify American Family are relevant to the question of whether they actually had notice. I agree with the trial court.

In sum, though I do not condone the actions of Fuller, Kremer's attorney prior to the trial before the advisory jury, I do not conclude that the jury or the trial judge were wrong in their respective decisions. "Upon review, the evidence and inferences therefrom must be viewed in a light most favorable to uphold the verdict and, if there is competent and substantial evidence to support the verdict, it must be upheld." *Gross v. Connecticut Mut. Life Ins. Co.*, 361 N.W.2d 259, 273 (S.D.1985) (citations omitted). The trial court should be affirmed.

HENDERSON, Justice (specially concurring).

American Family seeks to impose a condition precedent, namely that it did not receive a copy of a Summons and Complaint.

Where an insurance company denies liability because it believes its insured to be at fault rather than the uninsured motorist, a condition precedent (receiving a copy of a Summons and Complaint) is inapplicable. *Childs v. Allstate Ins. Co.*, 237 S.C. 455, 117 S.E.2d 867 (1961). Accord: *Stephens v. State Farm Mutual Automobile Ins. Co.*, 508 F.2d 1363, 1366 (5th Cir.1975), wherein the rationale was as follows:

The rationale behind holding to this particular waiver theory is that a claimant should not be required to approach his insurer, hat in hand, and request consent to settle [or sue] with another when he has already been told, in essence, that the insurer is not concerned, and he is to go his way. It is difficult to see why an insurer should be allowed, on the one hand, to deny liability and thus, in the eyes of the insured, breach his contract and, at the same time, on the other hand, be allowed to insist that the insured honor all his contractual commitments.

Amen, Brother. I agree. An insurance company cannot cavalierly disclaim liability on an uninsured motorist policy and then claim immunity from a later judgment obtained by its abandoned insured. *See also, Aristonico Infante v. Preferred Risk Mut. Ins. Co.*, 364 So.2d 874 (Fla.App.1978); *Shook v. Hertz Corp.*, 349 A.2d 874 (Del.Super.Ct.1975).

Therefore, although the jury and trial court concluded that (1) notice was required and (2) notice was given, my legal posture is different, i.e., American Family was not entitled to any notice. American Family abandoned its insured. My philosophical funny bone is theoretically amused when I note that American Family's first reaction, upon learning of Kremer's suit against Schmidt, was to become concerned

over its own subrogation rights (and, you see, there is nothing to subrogate if Kremer was contributorily negligent). Rather than to set about its contractual obligations, it became acutely apprehensive of its corporate coffer, leaving Kremer to fend for herself. In point of fact, American Family, from the inception of this scenario, knew that Gary Schmidt was an uninsured motorist. Knowing this, it rejected Kremer's claim under the policy.

## CHRONOLOGY

- February 13, *1986*, accident takes place; Kremer had a provision in her policy for uninsured motorist coverage.
- February 15, *1986*, American Family's agent, Kendall, prepared a telephone loss report reflecting Schmidt had no liability automobile insurance at the time of accident. Kendall filed a loss report with his company.
- March 5, *1986*, Kremer was interviewed by a claims agent of American Family.
- American Family neglected its policy obligations. Finally—on
- February 8, *1989*, worried and disgusted, Kremer called the company complaining. She expressed her concern over the three year statute of limitations running and wanted to obtain a settlement on her uninsured motorist claim.
- February 8, *1989*, Carlson informed Kremer: "It was our feeling we would not honor an uninsured motorist's claim." Kremer advised Carlson that she had only 5 days left and she was contacting an attorney.
- February 13, *1989*, Kremer filed suit against Schmidt.
- June 28, 1990, Attorney Brad Gordon contacted the Kendall Insurance Agency informing said agency that Kremer was suing the uninsured motorist.
- In July, August, September and the first half of October, 1990, insurance company, like an ostrich, stuck its head in the sand and did nothing.

- October 16, 1990, Attorney Gordon again contacted American Family's adjuster in Sioux Falls, South Dakota, to secure a breakdown of medical bills. Adjuster furnished same.
- November 14, 1990, same adjuster called Gordon to find out what was going on with the lawsuit. Attorney Gordon told her.

Insurance company refused to protect its insured and it neglected to protect itself. When an insurance company, such as the one here, repudiates its liability, it has breached the policy and releases the insured from a condition precedent (notification). Thus, the 29 cent stamp dissent on a letter is ill-founded. *See Vanguard Ins. Co. v. Polchlopek*, 18 N.Y.2d 376, 275 N.Y.S.2d 515, 222 N.E.2d 383 (1966).

Under the circumstances of this case, the "29 cent stamp" dissent is basically flawed in fact and in law. For the writer of said dissent to charge attorneys Fuller and Gordon with concealment and deception is extremely unfair. Both of these lawyers are highly principled men, one a recent law clerk who ably served this Court—the other being the Chairman of the Judicial Qualifications Commission, a state Constitutional body. These men are the messengers and the dissent tries to shoot the messengers. They were the legal messengers of Kremer who had a contract with, and a legitimate beef against, an insurance company which, in effect, told their policyholder to go jump in the lake. Fuller and Gordon are not the culprits in this legal scenario; the insurance company, which took the insurance premium and would not honor its legal obligation, is the culprit. A stamp would have told American Family only what it knew already and spawned: Litigation.

WUEST, Justice (dissenting).

In my opinion the trial court was clearly erroneous in finding American Family had sufficient notice of the suit against Schmit. Therefore, I vote to reverse.

SABERS, Justice (dissenting).

*I pledge allegiance...*

This is a stamp. It is a 29 cent stamp.[1] It is all that was necessary to eliminate the need for this appeal.

This contract of insurance provides in part:

A person claiming *any coverage* of this policy must also:

1. Assist us in any claim or suits;

2. Promptly send us any legal papers received relating to *any claim or suit* [.]

(Emphasis added.) All attorneys Fuller and Gordon had to do was mail a copy of the Schmit summons and complaint to American to comply with the aforementioned policy provision. Instead, they did almost everything they could to keep American from getting notice and defending the "default" judgment. For their efforts of concealment and deception, we should reverse this case and require a trial instead of affirming a "hidden default judgment."

The trial court was clearly erroneous in finding American had sufficient notice of the suit against Schmit. While almost every pleading document generated in Kremer v. Schmit, Civ 89–31, was served upon Schmit by mail, no pleading documents were sent to American even though Kremer's attorneys knew they were going to seek uninsured motorist benefits from American as early as the spring of 1989. Both Attorney Gordon and Mrs. Kremer admitted that they never told anyone at American, including agent Ramsey Kendall, that the Kremers were going to look to American for uninsured motorist benefits. Instead, Kremers played "hide the ball" so that they could obtain a default judgment and then spring it upon Ameri-can. As the majority opinion points out, they even went so far as to "purposely wait[ ] 78 days after taking the default judgment before notifying American that the default judgment had been entered and requesting $100,000 under the 'uninsured motorist' provisions of the policy." American attempted to show, by offer of proof, that Attorney Fuller admitted the reason he did not give notice of the Default Judgment was that he did not want American to be able to appeal. SDCL 15–26A–6.[2]

In order for there to be any repudiation of liability, as Kremers assert, American must first be adequately informed of the filing and pendency of the claim so that it can take appropriate action. Without full notice, there can be no repudiation of liability. In *Aetna Cas. & Sur. Co. v. Souras,* 78 Md.App. 71, 552 A.2d 908 (1989), the court noted, "[i]t is settled law that considerations of due process require notice in order for an insurer to be bound by the outcome of the tort action." *Id.* 552 A.2d at 911 (citation omitted).

The fundamental requisite of due process of law is the opportunity to be heard. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.

. . . .

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.*

An appeal from the judgment must be taken within sixty days after the judgment shall be signed, attested, filed and written notice of entry thereof shall have been given to the adverse party.

---

1. At the time that a copy of the Schmit summons and complaint should have been mailed to American Family in 1989, it would have only required a 25 cent stamp.

2. SDCL 15–26A–6 provides in part:

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950) (citations omitted) (emphasis added); *First Nat'l Bank of Eden v. Meyer,* 476 N.W.2d 267, 270 (S.D. 1991).

Kremers ignore the fact that Lisa Serck's understanding was that Mrs. Kremer was "suing the other company." Arguably, American received notice of the hearing on October 16, 1989, when Gordon called Serck for a list of medical expenses paid by American. This conversation, limited as it was, occurred less then two hours before the default hearing. In *Erickson v. Bennett,* 409 N.W.2d 884 (Minn.App.1987), the insurance company received a copy of the summons and complaint but had only one day's oral notice of the default hearing. The Minnesota Court of Appeals held that the trial court erred in denying the insurance company's motion to intervene and to vacate the default judgment and stated:

St. Paul should have the right to dispute the questions which make it liable on its contract and should not be penalized when it was put on notice of the default hearing in an untimely manner

*Id.* at 887. Kremer's notice to American was not notice but deception and it was not legally sufficient to satisfy due process standards.

In this case, Mrs. Kremer obtained a default judgment in the amount of $150,000 without an adversarial determination of liability and damages. An uninsured motorist carrier cannot be bound by a default judgment without an adversarial determination of liability and damages. *MFA Mutual Ins. Co. v. Bradshaw,* 245 Ark. 95, 431 S.W.2d 252 (1968). As the Minnesota Court of Appeals noted in *Erickson:*

A significant dispute exists here as to both the issues of liability and damages. The default hearing was marked by a complete absence of the adverse relationship essential to fully and fairly litigate these issues, including the strongly contested issue of comparative negligence. St. Paul has a substantial interest in this action and is entitled to answer Erickson' complaint, asserting any defenses that may exist to the claim.

409 N.W.2d at 888.

American asks, "[w]hy, if in the spring of 1989 when Mrs. Kremer's attorneys knew that they were going to look for uninsured motorist benefits from American Family, did they not merely send a letter and a copy of the pleadings so that American Family could take appropriate action?" Is it possible they didn't have a stamp? It is apparent that this was not done because every attempt was going to be made to get a judgment, whether by confession of judgment or by default, so that American would have to pay. It is also apparent that Mrs. Kremer and her attorneys did not want American to be fully informed about the situation! Why not? Because American could have intervened and litigated the case in an adversarial setting.

If this court affirms this judgment, we are, in effect, ratifying concealment, deception, and a planned violation of due process. I will have no part of it. This case should go back to square one.[3] Kremers should

---

**3.** Judge Erickson's writing claims we do not have authority to send this case back to "square one." As the moderator in *"Evita"* sings "That's not the point, my friend," I must reply similarly to Judge Erickson.

If we hold as a matter of law, as we should, that there was insufficient notice, the plaintiff's default judgment will *not* be binding on American Family. The plaintiff will have to go back to "square one" to make her judgment *binding* on American Family. She will have to give American Family notice first and then have an adversarial hearing. As stated in *Erickson,* "[a]lthough St. Paul sought to vacate the default judgment against Bennett, technically the judgment need not be set aside in order for the

issues of liability and damages to be litigated. The matter may proceed with Erickson as party plaintiff and St. Paul as party defendant." 409 N.W.2d at 888.

Judge Erickson says he "would have been inclined to relieve the default and order a new trial." The *point* is that the default was taken against Schmit but not American Family because of lack of notice. What is wrong with making plaintiff do it right? No one is entitled to a free ride, at someone else's expense.

The attorneys' conduct does constitute "concealment, deception and a planned violation of due process" as to American Family. If this statement is "overblown" as Judge Erickson claims, then why did Kremer's attorneys:

have to prove liability and damages against Schmit in a legal setting with bona fide opposition. The foundation of the American legal system is notice, a hearing, and an opportunity to defend. These are the bare essentials of the American judicial process and they apply to insurance companies as well as to individuals. *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 881, n. 9, 105 S.Ct. 1676, 1683, n. 9, 84 L.Ed.2d 751, 761, n. 9 (1985) (citation omitted). Anything less is a violation of due process.

We should reverse and remand for a fair trial and an opportunity to defend.

(1) fail to send American Family a copy of the Schmit summons and complaint;

(2) fail to send American Family copies of other significant correspondence and documents;

(3) go to such lengths to attempt to get Schmit to "secretly" confess judgment;

(4) fail to send American Family timely notice of the "default" judgment hearing;

(5) purposely wait 78 days after taking the secret "default" judgment *before* notifying American Family? Because they did not want American Family to even be able to appeal.

I submit the conclusion is obvious, not overblown. All they had to do was put a stamp on the Schmit summons and complaint and mail it to American Family and notify American Family of the time and place of the "default" judgment hearing. If we reward this conduct with an affirmance of $100,000, the entire State, Bench and Bar will pay the price.